EMELINE BOGARDUS, Appellant, v. NEW YORK LIFE INSURANCE Co., Respondent.

It is essential to the legal statement in a complaint of a cause of action *ex contractu*, that it should allege an existing contract and the performance by plaintiff of such conditions precedent as are thereby provided, or a tender of performance or some adequate excuse for non-performance.

Such an excuse exists only when the defendant has prevented performance by plaintiff, or has himself wholly refused to perform, or has wholly disabled himself from completing a substantial performance.

The failure of the defendant to perform some of the obligations of the contract which go to a part only of the consideration, when the breach may be paid for in damages, is not sufficient.

The defendant, by demurring to the complaint in such an action, does not thereby admit the construction put upon the contract by the complaint, or the correctness of the inferences drawn from the facts admitted ; he only admits the facts properly stated; and where the contract is set forth, the rights of the parties must be determined by its terms as construed by the court.

A mere representation made during the pendency of negotiations for a contract is not actionable, even if untrue ; it must appear to have been mate_ rial and made under such circumstances as to show that it was intended as a warranty of the fact represented, and so constituting a contract. A mere allegation in a complaint, therefore, of a representation is not equivalent to an averment of warranty or contract.

This action was upon a policy of life insurance, issued by defendant November, 1871, on the Tontine or " ten-year dividend system." A copy of the policy was annexed to and formed part of the complaint. By it the speci-

fied annual premium was to be paid each year for ten years, and in case of default in any payment the policy was declared null and void and all payments forfeited. It was also declared therein that no dividend should be allowed unless the insured should survive the ten-year dividend period and unless the policy should then be in force. Aside from the provision for payment of the amount of the insurance upon the death of the insured, the policy provided, in case he survived the ten-year period and the policy was then in force, for a payment in cash or annuity bonds of a proportionate share of dividends, accretions, etc., from a fund to be created by certain contributions furnished by a class of policy-holders, consisting of those effecting insurance on the same plan during the year 1871 ; also, that the surplus and profits derivable from certain described funds belonging to that class should be equitably apportioned among the surviving policy-holders belonging to the class. In the application for the insurance, the insured consented that defendant might place all dividends accruing on her policy in the reserve fund. The complaint alleged payment of premiums up to November, 1879. This action was commenced in January, 1881. The complaint averred that by the policy defendant bound itself to "receive and keep separate all the premiums paid upon policies of the same class," and all the incomes, profits, etc., accruing therefrom ; and alleged as a breach of the contract that defendant had neglected to keep and invest said funds separately. No tender of premiums after November, 1879, or other excuse for non-payment, save the alleged breach on the part of the defendant, was set up, nor was it averred that defendant was insolvent or unable to respond in damages for any breach of contract on its part. On demurrer to the complaint, *held*, that the complaint substantially admitted a non-payment of premiums, and so a breach on the part of the plaintiff of a condition precedent ; that the policy did not require a separate investment of the funds belonging to the class which included the policy in suit; and that the consent of the assured to the placing of dividends in a reserve fund did not extend its obligations in this respect; that the averments in the complaint as to defendant's obligations, being simply inferences drawn from the contract itself, were not admitted by the demurrer ; but that, assuming the failure to keep the funds separate was a breach of the contract on the part of defendant, it was a breach of an independent agreement for which it could respond in damages, and was not an excuse for non-payment of the premiums ; and that, therefore, the complaint failed to show a cause of action.

The complaint contained two counts, the first based upon alleged false and fraudulent representations. The averments were in substance that for the purpose of inducing plaintiff to take out a policy on the Tontine plan, defendant represented that it had received and kept separate, and would continue to do so, the funds belonging to the same class as plaintiff's policy, which representations were relied upon by plaintiff, and

were false and fraudulent. In the second count, which was for an alleged breach of the contract, it is stated that plaintiff "repeats and reiterates all the allegations hereinbefore contained and makes them a part of her second cause of action." *Held*, that, assuming the averments as to the representations in the first count were incorporated in the second (as to which *quære*), as they were made concurrently with the issuing of the policy, and were necessarily incident to and dependent upon it, the non-performance by plaintiff of the condition precedent, *i. e.*, regular payment of annual premiums, furnished the same defense to an action based thereon; also, that the averments in the first count did not show any cause of action resting in contract, as there was no averment that the representations were a warranty, or were made under such circumstances and in such form as to constitute a contract.

(Argued December 23, 1885; decided January 19, 1886.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made June 25, 1883, which affirmed a judgment in favor of defendant, entered upon an order sustaining a demurrer to the second count of plaintiff's complaint herein.

The substance of the complaint is set forth in the opinion.

*B. F. Tracy, Wm. Wirt Hewitt* and *Lucius McAdam* for appellant. The complaint should be liberally construed. (Code of Civ. Pro., § 519; *Prouty* v. *Whipple*, 10 Week. Dig. 387.) If the facts set forth therein present any cause of action, entitling the plaintiff to *any* relief, legal or equitable, a demurrer thereto for insufficiency must be overruled. (*Marie* v. *Garrison*, 83 N. Y. 23; *Price* v. *Brown*, 10 Abb. N. C. 67; *Butterworth* v. *O'Brien*, 39 Barb. 192; *Conaughty* v. *Nichols*, 42 N. Y. 86; *Wright* v. *Hooker*, 10 id. 59; *Mackey* v. *Auer*, 8 Hun, 183.) Defendant's agreement imports "an obligation" upon "the defendant arising out of a confidence reposed" in it "to apply" the reserve fund "faithfully and according to confidence." Such an agreement constitutes a trust. (*Martin* v. *Funk*, 75 N. Y. 141; *Day* v. *Roth*, 18 id. 453; *Barry* v. *Lambert*, 98 id. 306; *Fisher* v. *Fields*, 10 Johns. 505; *Watt* v. *Shipman*, 21 Hun, 598, 606; *People* v. *City Bk. of Rochester*, 96 N. Y. 32; *Matter of Le Blanc*, 14 Hun, 8; *Lowerre* v. *Am. Fire*

*Ins. Co.*, 6 Paige's Ch. 482; *Libby* v. *Hopkins*, 103 U. S. 309; 2 Story's Eq., § 964.) It was entirely competent for the parties to make the contract contained in the policy and at the same time to leave the meaning of certain words and expressions thereof uncertain, and to leave the explanation of such meaning, and the plan of the system under which the policy was issued to be settled by extrinsic evidence. (*Hope* v. *Balen*, 58 N. Y. 380; *Hineman* v. *Rosenback*, 39 id. 98; *Whitford* v. *Laidler*, 94 id. 148; *Chapin* v. *Dobson*, 78 id. 74; *Potter* v. *Hopkins*, 25 Wend. 417; *Beach* v. *Raritan & D. R. R. Co.*, 37 N. Y. 465; *Briggs* v. *Hilton*, 99 id. 526; *Eighmie* v. *Taylor*, 98 id. 288.) The general rule which forbids parol evidence varying the terms of a written contract has no application to collateral undertakings. (*Eighmie* v. *Taylor*, 98 N. Y. 288; *Chapin* v. *Dobson*, 78 id. 74; *Johnson* v. *Oppenheimer*, 55 id. 293; *Van Brunt* v. *Day*, 81 id. 251; *Julliard* v. *Chaffee*, 92 id. 529; *Hope* v. *Balen*, 58 id. 380.) A failure on the part of plaintiff to pay or tender payment of the premiums did not preclude her from recovering damages for the defendant's admitted breaches. (*People* v. *Empire Mutual L. Ins. Co.*, 92 N. Y. 109; *Shaw* v. *Republic L. Ins. Co.*, 69 id. 293; *Atty.-Gen.* v. *Guardian L. Ins. and Ann. Co.*, 78 id. 125.) The utter failure and inability of the defendant to perform its contract from its inception having been admitted, the defendant holds plaintiff's money without any consideration therefor, and an action will lie to recover back the money thus paid without consideration. (*Weller* v. *Tuthill*, 66 N. Y. 347; *Freer* v. *Denton*, 61 id. 492; *Wright* v. *Hooker*, 10 id. 59; *Conaughty* v. *Nichols*, 42 id. 86.) It cannot be claimed that the company had no right to make such a special contract. It made it, and has received plaintiff's money under it. The plea of *ultra vires* cannot avail the defendant. (*Bissell* v. *M. S. & N. I. R. R. Co.*, 22 N. Y. 262; *Mad. Ave. Bap. Ch.* v. *Oliver St. B. C.*, 73 id. 90; *Whitney Arms Co.* v. *Barlow*, 63 id. 62; *Kent* v. *Quicksilver Mining Co.*, 78 id. 159.) Having admitted the contract, and not having pleaded the statute of frauds, or in-

sisted upon it in its answer, the defendant is deemed to have renounced the benefit of it. (*Harris* v. *Knickerbocker*, 5 Wend. 638; *Cozine* v. *Graham*, 2 Paige, 177; *Duffy* v. *O'Donovan*, 46 N. Y. 226; *Bommer* v. *Am. Spiral, etc., Hinge Mfg. Co.*, 81 id. 468; *Marston* v. *Swet*, 66 id. 209.) Even if it were true that the plaintiff has alleged an improper measure of damages, that fact cannot be taken advantage of by demurrer. (*Wetmore* v. *Porter*, 92 N. Y. 80.)

*Wm. B. Hornblower* for respondent. So far as the complaint sets forth a contract different from that contained in the policy it is demurrable. (1 Greenl. on Ev., § 275; 2 Whart. on Ev., §§ 920, 1014; *Tayloe* v. *Riggs*, 1 Pet. 600; *Ins. Co.* v. *Mowry*, 96 U. S. 544; *White* v. *Ashton*, 51 N. Y. 280; *Parkhurst* v. *Van Cortlandt*, 1 Johns. Ch. 283; *Imham* v. *Child*, 1 Bro. 92; *Pohalski* v. *Mutual L. Ins. Co.*, 36 N. Y. Supr. Ct. 234; affirmed, 56 id. 640; *Harper* v. *Albany Mutual Ins. Co.*, 17 N. Y. 194; *Lamott* v. *Hudson River Fire Ins. Co.*, id. 199, note; *Howell* v. *Knickerbocker L. Ins. Co.*, 23 id. 516; *Mayor, etc.*, v. *Brooklyn Fire Ins. Co.*, 41 Barb. 231; *Renner* v. *Bank of Columbia*, 9 Wheat. 587; *Hunt* v. *Rousmanier*, 8 id. 211; *Bk. of U. S.* v. *Dunn*, 6 Peters, 51; *Renard* v. *Sampson*, 12 N. Y. 561; *Hoare* v. *Graham*, 3 Camp. 56; *Brown* v. *Wiley*, 20 How. 442; *Specht* v. *Howard*, 16 Wall. 564; *Brown* v. *Spofford*, 95 U. S. 482; *Martin* v. *Cole*, 104 id. 30.) The policy being set forth in full in the complaint, our demurrer admits only the agreement as set forth in the policy. So far as the allegations of the complaint purport to construe or interpret the provisions of the policy, our demurrer does not admit of such allegations. (*Buffalo Catholic Institute* v. *Bitter*, 87 N. Y. 250; *Bonnell* v. *Griswold*, 68 id. 294; *Dillon* v. *Barnard*, 21 Wall. 430; *U. S.* v. *Ames*, 99 U. S. 35.) This is not a case in which parol evidence is required to explain technical words, or to annex incidents. (Greenl. on Ev., §§ 294, 295.) The general allegation in the complaint that defendant did not keep or perform any of the conditions of said policy amounts to nothing. This

general allegation is explained and qualified by what precedes
and follows as to the particular conditions claimed by plain-
tiff to be contained in the policy, and claimed to have been
violated. (*Clark* v. *Dillon,* 97 N. Y. 370, 373; *Speer* v. *Down-
ing,* 36 Barb. 522; *Conger* v. *Hudson R. R. R. Co.,* 12 N. Y.
190; *Bunge* v. *Koop,* 48 id. 225; *Bates* v. *Rosekrans,* 23
How. Pr. 98; *Knapp* v. *City of Brooklyn,* 97 N. Y. 520;
*Southwick* v. *First Nat. Bank,* 84 id. 429; *Suprs.* v. *Decker,*
30 Wis. 624, 633; *Riley* v. *Riley,* 34 id. 376; *Drum* v.
*Horton,* 1 Pinney [Wis.], 456.) The relations of a policy-
holder to a mutual insurance company are not those of a *cestui
que trust* to a trustee, but those of a contracting party to
another contracting party, and their relative rights and liabilities
are to be determined by the contract. (*Taylor* v. *C. O. L. Ins.
Co.,* 9 Daly, 489; *Hincker* v. *U. S. L. Ins. Co.,* 16 N. Y. [1
Weekly Dig.] 44; *Verplanck* v. *Mercantile Ins. Co.,* 1 Edw.
Ch. 84; *People* v. *Security L. Ins. Co.,* 73 N. Y. 114; *Bin-
ley* v. *Eq. L. As. Soc.,* 61 How. Pr. 346.) The statute of
frauds applies to this case so far ʸas the ten-year dividend
scheme is concerned, and hence no parol evidence would be
admissible to add to or vary the terms of the contract in that
particular. (*Trustees, etc.,* v. *Bklyn. F. Ins. Co.,* 19 N. Y.
307; *Shute* v. *Dorr,* 5 Wend. 204, 206, 207; Browne on
Stat. of Frauds, § 282; *Packet Co.* v. *Sickles,* 5 Wall. 580, 595;
*Birch* v. *Earl of Liverpool,* 9 B. & C. 392; *Dobson* v. *Espie,*
2 H. & N. 81; *Doyle* v. *Dixon,* 97 Mass. 211; *Peters* v.
*Westborough,* 19 Pick. 364; *Hill* v. *Hooper,* 1 Gray, 131;
*Boydell* v. *Drummond,* 11 East, 156, 159; *Harris* v. *Porter,*
2 Harr. [Del.] 27; *Foote* v. *Emerson,* 10 Vt. 338; *Lockwood* v.
*Barnes,* 3 Hill, 128; *Weir* v. *Hill,* 2 Lans. 278; *Broadwell* v.
*Getman,* 2 Den. 87; *Tolley* v. *Greene,* 2 Sandf. Ch. 91; *Du-
rand* v. *Curtis,* 57 N. Y. 7; *Kellogg* v. *Clark,* 23 Hun, 393;
*Bernier* v. *Cabot Mfg. Co.,* 71 Me. 506.) The agreement
which the plaintiff seeks to engraft on the policy was of the
very essence of the contract, and provided for the method of
administering and distributing the ten-year dividend funds.
It cannot in any sense be considered as collateral. (*Eighmie*

v. *Taylor*, 90 N. Y. 288.) Prior written negotiations and representations are merged in the subsequent written contract as much as oral negotiations and representations are, unless expressly referred to and made a part of the written contract. (2 Pars. on Cont. 548; *Vandervoort* v. *Smith*, 2 Caines, 155, 161; *Munford* v. *McPherson*, 1 Johns. 414; *Riley* v. *City of Brooklyn*, 46 N. Y. 444, 446.)

RUGER, Ch. J. The appellant asserts in the brief used on the argument, that the count of the complaint demurred to, states a cause of action *ex contractu* alone. and we are also of the same opinion.

It is essential to the legal statement of such a cause of action that it should show an existing contract, and the performance by the plaintiff of such conditions precedent as are thereby provided, or a tender of their performance, or some adequate excuse for non-performance. This may be done by a general allegation of performance, but in some form the fact must be alleged, and if controverted, proved on the trial. (Code of Civ. Pro. 533.)

The cause of action stated in this count is for an alleged breach of the conditions of a policy of insurance dated Nov. 3, 1871, and which purports to have been issued by the defendant to the plaintiff upon the life of her husband, and is stated to be in consideration of the sum of $377.45 to them in hand paid, and of the annual premium of $377.45 to be paid "in every year during the continuance of this policy until ten full years premiums shall have been paid." It further provides that "If the premiums as above stipulated" shall not be paid, "then and in every such case this company shall not be liable for the payment of the sum aforesaid, or any part thereof, and this policy shall cease and determine." "In every case when this policy shall cease and determine or become null and void, all payments thereon shall be forfeited to this company, and no action or right of action shall remain to or be maintained against the company by the assured, or by any other person by virtue of this policy or any thing connected therewith;" "that this

policy is issued on the ten-year dividend system," and "that the ten-year dividend period for this policy shall be completed" on the 3d day of November, 1881; "that no dividend shall be allowed or paid upon this policy unless the person whose life is assured shall survive until the completion of its ten-year dividend period and unless the policy shall then be in force." The complaint alleges payment of the annual premium stipulated for only to the 3d day of November, 1879, and this action was commenced on the 28th day of January, 1881, nearly a year before default could be made in the payment of dividends on the insurance, and more than a year after the policy had ceased to be an existing contract, unless some adequate reason is alleged for the non-payment of premiums by the plaintiff.

The contract, as pleaded, provides for the regular payment by the assured of the annual premiums, and such payments are made the condition of any claim thereunder, and the non-payment of such premiums causes the policy to become null and void and forfeits to the company all payments made thereon. These conditions were lawful; the parties were competent to enter into them, and unless performance or its equivalent is alleged, the plaintiff has failed to state a good cause of action, and must abide by the case as shown by her complaint.

The statement in the complaint with reference to the payment of the annual premiums, is equivalent to an admission that they were not paid after November, 1879, and contains no allegation that she was in any way prevented by defendant from performing, but it is now argued that the alleged non-performance by the defendant of certain obligations alleged to have been assumed by it, may be considered as equivalent to an allegation of performance by her. We are very clearly of the opinion that this claim is not substantiated by the terms of the contract, or the allegations of the complaint. The failure of one party to a contract to perform some of its obligations, when it consists of a number of independent provisions, furnishes no excuse for non-performance, to the other party. It is only when the non-performance, is of a condition precedent, or where such party has wholly refused to perform, or has wholly disabled

himself from completing a substantial performance, that the other party is relieved from performance, or a tender thereof. (*People* v. *Empire Mutual L. Ins. Co.*, 92 N. Y. 105, 109; *Shaw* v. *Republic L. Ins. Co.*, 69 id. 286, 293.)

The complaint alleges the obligations of the defendant charged as not performed by it in the following language : " That by the contract or policy of insurance issued to her as aforesaid, *a copy of which is hereto annexed*, the defendant then and there bound itself to *receive and keep separate* all the premiums paid upon policies of the same class to which her policy belonged as aforesaid, and to *keep as a separate fund* all the incomes, profits and accumulations that should accrue therefrom, or upon policies of the insured in such class, and to add thereto as forming part of and in addition to the fund so created for said class to which the plaintiff belonged, the shares of those members who should die during the ten-year dividend or Tontine period, the shares of those members which should become forfeited for any cause during said term, and all accumulations and profits belonging thereto, and to declare annual dividends of the income and profits so derived, and to invest and reinvest from year to year the dividends so derived until the end of the ten-year dividend or Tontine period, and to hold the same in trust, and then to divide the same to the survivors of the class to which the plaintiff belonged." The appellant's contention is that the defendant's neglect to keep and invest separately the funds referred to, justified the plaintiff in her neglect to perform, and established a cause of action against defendant. The policy is annexed to, and by the clause quoted is made a part of, the complaint.

Assuming for the present that the facts alleged, have been so pleaded, as to entitle the plaintiff to urge them as an excuse for her admitted non-performance, we are brought to an inquiry as to their sufficiency for such purpose. This depends upon the considerations : 1. Whether the complaint correctly describes the obligations assumed by the defendant; 2. Whether the obligations, in fact, assumed by it constituted material conditions of the contract; 3. Whether there is a sufficient alle-

gation of the non-performance of them by defendant ; and 4. Whether their non-performance was the occasion of injury to the plaintiff.    These questions must be determined by an examination of the policy, and a consideration of its provisions.

In interposing the demurrer, the defendant did not thereby admit the construction put upon the contract by the pleading demurred to, or the correctness of inferences, drawn from the facts admitted, but only the truth of such facts as were properly stated therein.    (*Bonnell* v. *Griswold*, 68 N. Y. 294 ; *Buffalo Catholic Institute* v. *Bitter*, 87 id. 250.)

· The contract itself having been set forth, the rights of the parties must be determined by the terms of that instrument, as construed by the court.    Reference thereto shows that the material obligations assumed by the defendant, related to the payment to the assured, or in the event of her death, to certain other persons described, the sum of $5,000, upon the death of Abraham Borgardus ; and (2) in case the said Bogardus survived for a period of ten years and the said policy should continue in force until that time, the payment in cash or in annuity bonds to the said assured, or upon her direction, of a proportional share of the aggregate sum produced by the accumulations of dividends, accretions and interest, during the period of ten years, from a fund to be created by certain contributions furnished by a class of policy-holders, consisting of those who effected insurance on the Tontine plan during the year 1871 ; (3) That the surplus and profits derivable from certain described funds, shall be equitably apportioned among the surviving policy-holders belonging to the class from which such funds were derived.

The obligations assumed in the policy are not changed or enlarged by the consent of the assured, given in the application for insurance to the defendant, to place all dividends accruing on her policy in a reserve fund.    That provision merely waives the right of the assured to demand immediate payment, of any annual dividend to which she might be entitled.    No express obligations are assumed by the defendant either in the policy or by the application with reference to the management or in-

vestment of the funds in question, and the Tontine plan is referred to as a known and understood system of insurance, pursued by all life insurance companies of similar character to determine in a certain contingency, the extent of the company's liability to a special class of its policy-holders. It contemplates the union of the interests of a large number of persons, and the administration of a fund for their mutual benefit, and from its very nature is incapable of being moulded and managed, to meet the special requirements of particular individuals. Upon the · accession of any person to this class, he becomes interested in the contributions of every other member, and neither of them can afterward withdraw his contribution, without injury to the rights of all others interested in the fund. It is the very nature of a corporate company carrying on the business of insurance, that it should be subjected, at indefinite periods to the payment of large expenses, and the incurrence of large liabilities and risks, and its only resource, for the satisfaction of such obligations consists in the fund created by the premiums paid to it by its policy-holders. This fund is necessarily subjected to drafts upon it for uncertain amounts at uncertain intervals, and to require changes of its investments, and is incapable either in its entirety, or any specific part thereof, of being kept invested and managed separately from all other funds.

We, therefore, think that the use of these moneys in connection with its other funds, and their investment and management according to the mode, which, in the judgment of the defendant, was best adapted to promote the interests of all of ·its policy-holders, was entirely legitimate and in accordance with the true meaning of the contract.· The Tontine plan undoubtedly contemplated such action, on the part of the insurers, as would enable them, at the expiration of the ten-year dividend period, to determine the aggregate of such dividends, accretions and interest, and to divide the same among the survivors of the class to which they belonged, according to their respective rights therein ; but it seems to us, that it does not involve the necessity of keeping· separate from its other funds, either the premiums paid by such class or their profits or

accumulations, or the duty of separately handling, investing or accumulating such funds.

The complaint does not allege that the defendant has failed to keep such an account of these funds as will enable it to determine their amount, and the respective shares of the participators therein; but the argument assumes that this is impossible, unless they are separately kept and invested. We do not think this is necessarily true. The method to be adopted by the defendant in managing the funds paid to it by its several policy-holders was necessarily, under the insurance laws of the State, confided to its judgment, discretion and skill, and the plaintiff has no cause for complaint in reference thereto, except in the event of the survivorship of Abraham Bogardus for ten years, and the continued existence of her policy. Upon the happening of such event, and not until then, she would become entitled to an accounting as to such fund.

No reason is alleged in the complaint why the rights of the respective parties entitled thereto are not determinable from the data kept by the company, and we are unable to perceive any insuperable obstacle, to a proper accounting as to such moneys, in the fact of an omission by the company to keep and invest them separately from its other fund.

It does not enlarge the liability of the defendant to the plaintiff to denominate the relations between them as those of trustee and *cestui que trust*, because if the defendant had any trust duty to perform in relation to such fund it was expressed in the policy, and was simply to receive, keep and invest it carefully and prudently and so as to be able to divide it, and its accumulations, among those who should prove to be entitled thereto, at the expiration of the prescribed period. We are, therefore, of the opinion that the policy did not require the defendant to keep and invest the funds referred to separately, and that no breach of its contract is stated in the allegation that it neglected to do so.

We are also of the opinion that even if an obligation to do so could be implied from the provisions of the policy, that it

furnishes no excuse for the non-performance by the plaintiff of her contract.

The provision of the policy relating to an investment of the dividends upon the Tontine plan, was simply an incident of the main object of the contract of insurance. It was entirely problematical whether there would be any increase of the fund, or dividends, upon the investment, or whether any claimant would live to realize his interest therein, and a failure in the performance of this part of the contract was of minor importance, and could not operate as an excuse for non-performance by the assured of her obligations. It is elementary that where agreements go to a part only of the consideration on both sides, and a breach may be paid for in damages, that the promises are independent. (2 Pars. on Cont. 677.)

There is no allegation in the complaint of the insolvency of the defendant, or its inability to respond in damages for any breach of its contract. Its liability was purely a pecuniary obligation and capable of being fully performed by the payment of money, or its equivalent. The method by which the Tontine fund was created and managed, was designed simply as a means of determining the amount to which the policy-holder would be entitled in a certain event, and there is no difficulty in ascertaining such amount, in the case of a breach by the defendant of the contract relating to the mode of managing the fund. For this reason also we are of the opinion that the complaint does not allege a sufficient excuse for the non-performance by the plaintiff, of the precedent conditions of her contract.

In considering the questions presented, we have not omitted to observe the claim made by the plaintiff, that the action can be sustained upon the theory of an agreement existing outside of the policy, and contracted simultaneously with it. This claim is attempted to be supported by importing into the count demurred to, the allegations of the first count purporting to state a cause of action in tort. We can hardly conceive a more incongruous or objectionable method of framing a cause of action than that attempted in this case; but inasmuch

as we are of the opinion that even in that way, no cause of action *ex contractu* is legally stated we refrain from criticising the method pursued.

The second count of the complaint states that the plaintiff there " repeats and reiterates all the allegations hereinbefore contained, and makes them a part of this her second cause of action." The allegations material to the question under discussion contained in the first count are substantially as follows : That the defendant is a domestic corporation, organized under the laws of the State of New York for the purpose of insuring lives, and that prior to the time of issuing the policy in question, it had done a large business in the various branches of life insurance, and through its officers and agents for the purpose of inducing the plaintiff to take a policy from such company on the Tontine or ten-year dividend plan, represented that they were then doing business on that plan, and that it gave many and great advantages over the ordinary mode of life insurance. The count further states that certain explanations as to the practical operation of the Tontine plan were made to the plaintiff, but the details of such explanations are not material in this connection. It then proceeds to state that the defendant on the 3d day of November, 1871, issued its policy to the plaintiff, upon the life of Abraham Bogardus, for an insurance of $5,000, on the ten-year dividend system of insurance, and in that connection avers that " the defendant then and there represented that it had received and kept separate, and would receive and keep separate all premiums paid upon policies of the same class to which the policy " " of the plaintiff belonged," etc., and the further allegation that such representations were false and fraudulent and were relied upon by the plaintiff in accepting the policy.

Assuming that these allegations are properly incorporated in the second count, they must be construed in connection with the allegations of that count; and if any inconsistency between the two is found to exist, the allegations contained in the second count must, for obvious reasons, be adopted as containing the statements intended to be relied on by the pleader. It will be

observed that the second count also contains allegations refer-
ring to the representations made by the defendant, but they are
there expressly referred to as having been made by the policy
itself, while in the first count it is inferentially only that they
are so stated.

It could very justly be held that the pleader did not intend
by the reference in question, to repeat the allegations as to rep-
resentations, or to incorporate in the second count allegations
peculiar to an action of tort, and not pertinent and material to
the cause of action, there intended to be stated.   While it was
proper and necessary to the validity of the second count to
incorporate therein the allegations referring to the organization
of the company and the execution and delivery of the policy in
question, it was obviously unnecessary and highly objectionable
to repeat therein, the allegations intended to charge the defend-
ant with the commission of a tort.

It is not now claimed by the appellant that she is entitled to
recover under the second count for any other cause of action
than one arising *ex contractu,* and in view of these circumstances
it might well be said that the pleader did not intend to include
in the second count any of the allegations of the first, importing
the commission of a fraud.

Being of the opinion that there are other reasons why the
incorporation in the second count of the allegations of the first
does not entitle the plaintiff to maintain a cause of action *ex
contractu,* we refrain from disposing of the case on the grounds
above referred to.

The first objection to the plaintiff's contention is, that assum-
ing there were actionable representations, made by the defend-
ant to the plaintiff, they were made at the time of and concur-
rently with the issuing of the policy, and were necessarily
incident to, and dependent upon, the principal agreement of
insurance thereby effected, and must stand or fall with the
cause of action based thereon.

The condition precedent of the regular payment of annual
premiums by the plaintiff applies as well to the incidents of
the contract as to its express provisions, and furnishes the same

defense to an action based thereon as we have seen it does to the action on the policy.

It must, of course, be borne in mind that we are now inquiring only whether the plaintiff has alleged in her complaint any sufficient excuse for omitting to pay the annual premiums.

Secondly, we are also of the opinion that the statement contained in the first count does not show any actionable cause resting in contract against the defendant. It simply alleges that the defendant made certain representations as to its past and future conduct, but those representations were not alleged to have been a warranty, or to have been made under such circumstances and in such form and manner, as to constitute a valid contract. A mere representation made during the pendency of negotiations for a contract is not actionable *ex contractu* even if untrue. It must be alleged to have been material, and made under such circumstances as to constitute a contract, and show it to have been intended as a warranty of the fact represented to sustain such a cause of action. (*Swett* v. *Colgate*, 20 Johns. 196; *Ross* v. *Mather*, 51 N. Y. 108, 110; *Moore* v. *Noble*, 53 Barb. 425.) A warranty may be inferred from proof of a representation, but the naked allegation of a representation, is not equivalent to an allegation of a warranty or a contract. A representation is simply evidence from which a contract may or may not be inferred, and it is a fundamental rule of pleading, under all systems, that the facts constituting a cause of action must be alleged, and not the evidence of such facts.

We are further of the opinion that the representation in question is substantially the same as that alleged in the second count and is not a material representation, authorizing the plaintiff to omit the performance of the conditions assumed by her. This question has already been sufficiently discussed; and we conclude that, for the reason stated, the judgment must be affirmed and judgment absolute ordered for defendant.

All concur.

Judgment affirmed.