By the Court.—Sedgwick, Ch. J.
The complaint contains allegations of two causes of action for the breach of contract.
It alleges that plaintiff made the contract with the Atlantic and Pacific Telegraph Company, and that afterwards, the defendant, by agreement with the plaintiff, assumed and promised to perform the obligations of the Atlantic and Pacific Telegraph Company contained in the contract. By that contract the plaintiff agreed to furnish for transmission by the Telegraph Company over its lines “ news gathered ” by the plaintiff, and the Telegraph Company agreed to transmit such news “ over its lines.”
The plaintiff agreed to pay for the transmission by the Company of 6,750 words each day on an average the sum of $5,000 each month, and a further sum if a greater number of words were transmitted. It was further agreed that in case a less number of words were transmitted, an allowance or rebate upon the monthly sum of $5,000 was to be made, the yearly sum however to be not less than $50,000.
The seventh clause provided “ that the collection of all moneys due or to accrue from papers or subscribers to the plaintiff, shall be made by said Telegraph Company for the account of the plaintiff, and a full and detailed account shall be at all times duly kept by said Telegraph Company, which account shall always be open to the inspection of the plaintiff, and *29 the same shall be furnished and rendered" in due form by said Telegraph Company to plaintiff, monthly ; and payments of balance, if any due by the Telegraph Company to the plaintiff, shall be made on or before the 15th day of each and every month.”
As a first cause of action the complaint alleged that the plaintiff furnished for transmission from time to time news reports ; that defendant transmitted them and proceeded to collect from the different newspapers so served with plaintiff’s news reports the various sums agreed between said newspapers and plaintiff to be paid, which sums so collected in each month exceeded largely the sum agreed to be paid by plaintiff to the Telegraph Company for such service, and that there remains due and payable to plaintiff from defendant, for money actually collected and received by defendant and which should have been paid over to plaintiff by or before the 22nd day of June, 1882, the sum of $32,000.
For a first defence to this first cause of action, the answer, after admitting the incorporation of the defendant, and of the Atlantic and Pacific Telegraph Company, and the nature of their business as alleged in the complaint, denied that the Telegraph Company or defendant made with the plaintiff the contract averred in the complaint; alleged that at the time, etc., the plaintiff held himself out to be engaged in the business of collecting and delivering news as the representative and agent of a certain association called the National Associated Press of which he claimed to be the president, and was so known to the Telegraph Companies mentioned. Excepting matters before specifically admitted it denied each of the allegations of the complaint as to the first cause of action.
To a second defence to the first cause of action, the answer admitted that the contract set out in the complaint and therein averred to have been made by *30 the Atlantic and Pacific Telegraph Company was in fact made, but not with the plaintiff. It averred that the plaintiff at the time, etc., “claimed to be the president of the National Associated Press and to represent the same ; that he executed said contract as president, and that the Atlantic and Pacific Telegraph Company entered into said contract relying upon the truth of the representations of plaintiff, and that as late as January, 1882, about one year after the date of the alleged contract, plaintiff still insisted that the National Associated Press was a bona ficle and lawful association or company, and that be was duly authorized to act for it, and that the said representations were not true ; that the so-called National Associated Press never had any existence and that the plaintiff’s claim to be its president and to represent it in the negotiation, and as such president to execute contracts in its name, was wholly unauthorized, unlawful and fraudulent and calculated to deceive and injure the said Atlantic and Pacific Telegraph Company, and that the said contract, purporting on its face to be made between the Atlantic and Pacific Telegraph Company and the National Associated Press, was by reason of the facts hereinbefore alleged wholly illegal, fraudulent and void.
For the third defence to the first alleged cause -of action, the answer averred that the defendant had duly accounted for and paid over all sums as provided by the contract to the plaintiff.
Upon the trial, the defendant took the position that the contract was not made with the plaintiff, personally, and asked the referee to find that the plaintiff not being a party to the agreement, had not shown any right or title by which to enforce the same as against the defendant. The defendant did not ask a finding that the plaintiff represented that there existed a corporation named The National Associated Press *31 of which he the plaintiff was the president. It appeared by the testimony that there was an incorporation named The National Associated Press Company, limited. But there was no request to find that it was intended by the use of the former name to describe the latter corporation ; and there was no testimony which required the referee to find, if requested, that there was such an intention in fact. In fact the designation The National Associated Press was applicable to a fluctuating number of representatives of newspapers who made separate contracts with the plaintiff as to the prices which they would pay plaintiff for the transmission of news by the defendant. They held no relations to each other. They, or some of them, may have claimed that they had a right to share in the profits the plaintiff would gain from his contract. He denied that they had such a right. The testimony showed they did not have the right. But if the claim were valid, it would not follow that the contract in suit was not made with the plaintiff. And again, if the contract should be held to have been made with them the plaintiff being one of the parties in interest, they not being a legal incorporation or association, the defendant should have taken advantage by answer of the defect of parties plaintiff.
In fine, there being no natural or legal person specifically named by the description of the party of the second part, unless it was the plaintiff personally, it was a matter of fact to find what or who was intended by that description ; and I think that the finding as requested by defendant was correct, that the plaintiff did business under the name and style of the National Associated Press ; James H. Gfoodsell, president. This finding referred to a time designated as on and after February 1, 1881, ten days after the contract was madé. The evidence did not show that there was a different mode of doing business at the time the contract was made. This subject *32 has received attention on former appeals, and it has been held, as it is now held, that the plaintiff, personally, had a cause of action.
The remaining inquiry as to the first cause of action, is whether the referee was justified in his assessment of damages by the testimony in the case.
Upon this point the books of the defendant showed a balance in favor of the plaintiff amounting to $29,087.31. The significance of this lies in the fact that it shows that for whatever services had been actually rendered, the defendant had never charged the plaintiff with more than about $5,000 per month, including extras. By reducing the said balance to $16,777.42 the referee must have allowed the defendant the maximum rate for the regular' service under the contract and for extra services as follows :
Maximum price of $5,000 per month, 15 months and 21 days, ...... $78,500.00
All of Schedule Z, . ~ . . . 6,387.48
All of Schedule Z i, . . . . . 4,863.37
Of Schedule X, the two items showing special arrangements “ Lawrence,” .... 630.00
Do. showing “ Auburn Dispatch,” . , 390.00
Of Schedule X i on same principal, as X,
“Auburn ........ 120.00
Of Schedule Y, all but “ Far Western Circuit,” . 4,313.28
Of Schedule Y i,...... 68.45
Total,.......$95,272.58
With these allowances the account stands as follows: Collections by defendant from plaintiff’s customers, as admitted by stipulation, . . $157,800.00
Payments made by defendant to plaintiff on account thereof, as admitted by stipulation, . 45,750.00
Balance to be accounted for, . . $112,050.00
Credits to which the defendant is entitled for services and extra services, •. . . 95,272.58
$16,777.42
*33 Upon the whole case and after due consideration of all the conflicting claims of both parties, I am of the opinion that the balance then struck allows to the defendant all that it can reasonably claim. If there is any error in it of a substantial character, it is against the plaintiff and in favor of the defendant, for it is by no means clear that the defendant can rightfully charge the maximum rate allowed to each and every month in addition to the extras allowed.
The above statement of the account has been made by Judge Freedman and verified by me.
There was no error in the assessment of the damages on the first cause of action, and I proceed to the questions that relate to the second cause of action.
The second cause of action averred the making of the contract and the assumption by the defendant of the obligation of the Atlantic and Pacific Telegraph Company. It further averred that on March 11, 1882, without any default on the part of the plaintiff, the defendant ceased, refused and neglected to further carry out or perform said contract; that in the month of February, 1881, and in each month thereafter, the defendant had failed and neglected to render the plaintiff the account of collections, as provided in the contract, although often requested by plaintiff to render such statement ; that on and before March 11, 1882, plaintiff often demanded of defendant that it should carry out said contract according to its terms and that by reason of said breaches of the said contract the plaintiff had been greatly damaged, etc.
The answer in its first and second defenses to this second cause of action set up the same matter that was averred in the first and second defenses to the first cause of action, and as a third defence to the second cause of action denied that the defend *34 ant had at any time ceased, refused or neglected to do any of the acts provided in the said contract, or had'at any time refused or neglected to render accounts of the collection made by said defendant for said National Associated Press or for the plaintiff.
The answer by way of counter-claim alleged that there was due from plaintiff to defendant $15,000. for telegraphic services rendered by the latter to the former.
On this second cause of action the referee found for the plaintiff in the sum of $30,000.
On this appeal the learned counsel for the defendant argues that there- was no proof that defendant was guilty of such a breach that it entitled the plaintiff to recover damages under the second cause of action as for a breach of all the obligations of the defendant under the contract, and that assuming there was a breach it was- of a part of a contract that did not involve the entire contract and did not justify the plaintiff in treating the contractas ended, but called for a further performance or tender of performance by plaintiff of his obligations under that part of the contract that was not annulled by the alleged breach. This argument calls for the consideration of facts that will now be adduced from the findings or the testimony.
On March 11,1882, the president of the defendant wrote to the plaintiff: “I am therefore directed by the sub-committee to whom this subject was referred, to say to you that from and after this date you will be charged for the transmission of your press reports the same rate as that charged for other combination press reports in the respective territories in which said reports are handled under existing agreements, and that unless such rate is paid or secured to be paid to this company, the service will be discontinued. The committee feel that you cannot regard this as short notice since our discussion of the subject *35 for three months past has given you ample notice that it was our purpose and intention to increase the rates for your reports to that paid us by other customers for like services, and the committee feels that a decisive step in this direction has been already too long postponed.”
In fact the plaintiff did not treat this as a present repudiation of the contract by the defendant, nor did the defendant press the plaintiff to immediate action upon the letter. In a conversation between the plaintiff and the president of the defendant a little time after the latter, the president said to the plaintiff that the contract could not be considered any longer ; that he must inform him finally that the contract was repudiated by the company ; that they would not perform any more service under the contract, but that if the plaintiff wished to carry on his business under a new contract in accordance with new terms, they would give him time to see what sort of an arrangement he could make with his customers. The plaintiff proceeded to negotiations with his subscribers until March 24th, when the president wrote a letter giving new terms for a contract and then continued: “ I send you duplicates of this letter, one of which returned to me with your acceptance and signature will constitute the stipulations between yourself and this company and a sufficient basis for settlement for the services.” This was not treated as final, for the plaintiff, in a conversation had with the president, a few days after the letter asked for more time to make the experiment, and that if the company were to give more time he would see what could be done, and then the president answered ; “ Gro ahead and see what you can do.” The plaintiff continued his efforts with his subscribers. About the middle of June the plaintiff told the president that he could not make new arrangements and the president said that the subject could not be *36 reopened ; that it was disposed of absolutely. The plaintiff then and at all times insisted that the contract should be carried out according to its terms. The disbursing officer of the company in June refused to pay the plaintiff any more money.
On June 30. 1882, the plaintiff notified the company that he had not waived and did not waive any right or claims under the contract but insisted on the same; .that he had always been and still was ready, able and willing, and offered to carry out the contract on his part, The notice ended, “ My contract provides for monthly settlements and I desire to call your attention to the fact that no settlement has been had for several months although the same has been promised from time to time.”
The defendant did not reply to this notice, excepting that the president said he would refer the matter to counsel, and did not make or offer to make any settlement. On the 22nd of June, the plaintiff ceased to furnish any matter for transmission by the defendant.
From March 11 to June 22 the plaintiff regularly furnished matter for transmission and the defendant transmitted under the contract, collecting the moneys as directed by the plaintiff. Indeed by their answer and the testimony they gave, they took the position that they had fully performed down to the 22nd day’ of June and that there was no breach by them thereafter. It is not correct to say that they had fully performed down to June 22nd. They had in violation of the contract, omitted to make monthly statements and monthly payments. It may, however, be conceded that the plaintiff maintained the contract until June 20, and that at that time his rights were confined to recover the sums due by the contract and were not for damages for the loss of the contract. After June 20th, when the notice was given, the defendant was bound to perform its obligation to furnish monthly statements and make monthly payments. *37 (Winchill v. Scott, 114 N. Y. 640). The referee might properly find that the notice of June 20th contained a demand of defendant, that it should render the statements and pay as provided. They did not do this.
While the mere omission to make one monthly statement or payment might not under some circumstances amount to a repudiation of the whole of the contract by the defendant, I am of opinion that where the omission is not made upon a ground which might not be applicable to future omissions, and is not caused by peculiar circumstances that might not again occur, but appears to be upon grounds that would apply to future omission, a single omission is a present breach that absolves the other party from the duty of considering the contract as continuing, and of performing or tendering performance thereafter. In the present case, there was not a bare single omission and nothing more. There had been earlier omissions and there were facts and declarations by defendant’s agent that gave peculiar significance to the omission of defendant after June 20. The referee might rightfully consider that under the circumstances the defendant was called upon to make an answer to the notice, and that entire silence was an evidence in part of an intention not to perform the contract any longer. The obligation to render statements and make payments had an important substantial reference to the object for which the contract was made by plaintiff. It held a direct relation to the main objects of. the contract and was not collateral and ancillary as the obligation passed upon in Bogardus v. N. Y. L. Ins. Co., 101 N. Y. 328. Nor was the omission to account and pay by defendant due to peculiar circumstances and made under a mistake of the law of the case and without any intent not to make future payments as was the case in The Mersey Iron & Lead Company v. Nayler, 9 Q. B. Division, 648. In that case the law *38 was announced to be that a non-payment on the one hand or a non-delivery on the other may amount to such an act or may be evidence for a jury of an intention wholly to abandon the contract and set the other party free. “ The learned referee did not specifically find that the omissions were accompanied with an intent wholly to abandon the contract. No specific finding was asked by either party on the subject. But it was found in the findings that related to the letter of March 11 and 24, that the intention of the defendant evinced by it to repudiate the obligations of the contract existed to June 22d.
The broad inquiry is whether at the time in question the one party, considering all the circumstances, took a position that properly led the other party to believe that there would be no further performance. If he did the other party was not bound to tender further performance on his part. The testimony, required the referee to find that on June 20th, or immediately thereafter,- the defendant took the kind of position referred to, that it would not further perform.
It is argued that there was an inconsistency between making the letters of March 11th an 1 24th. a final and total breach and allowing the plaintiff to recover as if under the contract down to June 22, and then again finding that a total breach occurred by reason of the1 defendant’s omissions after June 20.
If there be an inconsistency in this it has not resulted in any detriment to the defendant, for the damages to be given for the time between March 11 and June 22, would be the same if claimed under and in performance of the contract or if claimed for breach of the contract. Howard v. Daly, 61 N. Y. 362 ; Everson v. Powers, 89 lb. 527.
But I do not find that there is any inconsistency. By the letters there was an absolute repudiation of the contract by the defendant. Yet while the de *39 fendant constantly refused to absolutely withdraw that repudiation, it consented that it should not be deemed to take effect for a certain time and protracted that time until the plaintiff declared that he could not make the arrangement for the making of which the time was given. Then the repudiation of the -contract in the letters was definitively asserted, and this definitive repudiation was coincident with the total breach by defendant of Omitting to furnish statements and make payment after the notice of June 20th. It was not incongruous with these facts to view the letters as containing a repudiation of the contract and final so far as the result was concerned, but suspended for a time.
It is not-necessary to say more because the learned referee examined fully and correctly the question of the case.
The plaintiff also appealed from the judgment. No exceptions taken by him on the trial calls for a reversal.
The judgment should be affirmed without costs to either party.
Freedman, J., concurred.
Ingraham, J., concurring as to the first cause of action, but dissenting as to the second.