CHARLES A. CLEGG, Respondent, *v.* THE NEW YORK NEWSPAPER UNION and Others, Appellants.

*Action for damages for a breach of a contract providing for the publication of matter in certain newspapers — evidence sustaining a judgment for the plaintiff — evidence properly excluded — condition precedent and collateral covenant, distinguished — when a right of action accrues — an oral assignment of a claim accompanied by the payment of the purchase price is valid — when interest on the amount of the damage should be allowed.*

APPEAL by the defendants, the New York Newspaper Union and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 2d day of July, 1892, upon the verdict of a jury, rendered at the New York Circuit, and also from an order of the Supreme Court, entered in said clerk's office on the 4th day of November, 1892, denying defendants' motion to set aside the verdict and for a new trial.

*Horace Russell,* for the appellant.

*William B. Hornblower,* for the respondent.

FOLLETT, J. :

For some years prior to 1876 the plaintiff was engaged in the city of New York in securing from persons, firms and corporations advertisements to be published in various newspapers. He is described in the case as an "advertising agent," but he is neither an agent of the advertisers nor of the publishers. He makes agreements with those wishing to secure the publication of their advertisements to procure their publication in certain newspapers for certain sums, and contracts with the papers, or those representing them, to publish the advertisements at rates agreed on. The difference between the rate paid to the newspapers and the rate which he receives from the advertisers is his profit. The defendants are corporations, except the individual defendants, who are partners under the firm name of Cramer, Aikens & Cramer, and control a list of newspapers called "The Milwaukee Newspaper Union." Each of these corporations and this firm controlled a number of newspapers called a list, published in various places, using what 'is known as "patent outsides." These outsides and many of the advertisements printed by these local newspapers were furnished by "The American Newspaper Union," an organization formed and controlled by the defendants, which organization had a president who was authorized to make contracts for advertising binding on the defendants. Before May 3, 1876, the defendants, under contracts entered into with the plaintiff, had procured to be published in the various local newspapers controlled by them advertisements at rates agreed upon. May 3, 1876, the parties entered into the following contract :

"NEW YORK OFFICE OF THE LIST OF CO-OPERATIVE NEWSPAPERS.
"E. W. FOSTER, *Special Agent.*
"148 and 150 Worth St.
"OFFICE OF THE N. Y. NEWSPAPER UNION, }
"NEW YORK, *May* 3, 1876. }

"CHARLES A. CLEGG, New York :

"DEAR SIR — I will execute your orders to the amount of $50,000 gross in the American Newspaper Union Lists, subject to the usual

rules and regulations on demand for $14,000, payable $1,000 down, $2,000 July 1st next, $1,000 monthly thereafter until paid, or at least as fast as the advertising expires.

"Orders in excess of $50,000 previous to April 1st, 1877, will be taken at 25 per cent of gross rates.

                                        "A. J. AIKENS, *President.*"

Under this contract the plaintiff was entitled to occupy a definite space, which is known as a "space contract." Pursuant to this agreement the defendants caused to be published in the newspapers under their control various advertisements furnished by the plaintiff which he secured from his advertisers. Controversies arose between the parties over their respective obligations and liabilities, and August 1, 1876, a new space contract was entered into, of which the following is a copy:

              "CHARLES A. CLEGG, ADVERTISING AGENT,
                     "TRIBUNE BUILDING.

"ADDRESS: P. O. Box 519.
                                 "NEW YORK, *August 1st*, 1876.
"Mr. A. J. AIKENS,
          "*President American Newspaper Union,*
                  "148 and 150 Worth Street, City:

"DEAR SIR — I hereby agree to carry out the contract for $50,000 (gross) worth of space made with you in the American Newspaper Union Lists May 3, 1876, by paying $1,000 cash and giving my seven notes for the balance, payable $2,000 October 3, $1,000 November 2 and $1,000 December 2, in 1876; also $2,000 January 1, $1,000 February 3, $2,000 March 2 and $3,000 April 1st, in 1877, on your agreeing to carry out the following conditions, viz.:

"1st. It is understood that you have given me as low rates as you have to any New York advertiser, agent or agency, and should you give any one a lower rate during the continuance of this contract you are to make this equally low.

"2nd. If I have not used up all of said space prior to April 1, 1877, then I am to be allowed to continue inserting advertisements until the space is all used, and should I require any additional space on orders taken before 1st April next, I am to have said extra space at twenty-five per cent of gross rates, by paying cash with each order.

" 3rd. All of this $50,000 worth of space is to be charged at gross rates.

" 4th. You are not to receive any more advertisements from George W. Niles or his agents, or sell him any more space.

" 5th. As there is a disagreement between us as to the contracts made in your and A. N. Kellogg's lists prior to May 3rd last, I am to retain the amount of $6,766.04 (for which you have rendered me bills), until the completion of the balance of said contracts, when Mr. Foster and myself·are to write out a full statement of our respective claims, and you agree to pass upon the same impartially. Should your decision not prove satisfactory to me, then it is mutually agreed to have the same adjusted by the courts. Hereafter I am to pay you monthly on the balance of said contracts until they are completed.

" Respectfully yours,<br>" CHARLES A. CLEGG."

The first paragraph of this contract, not numbered, relates to carrying out the stipulations of the contract of May third. Subdivision No. 5 relates to the performance of the then outstanding contracts entered into before May 3, 1876. Between June 10, 1876, and December 27, 1876, the plaintiff secured fourteen contracts from different firms and corporations for advertising in said newspapers for which he was to receive from the advertisers $25,048.31. Twelve of the fourteen advertisements were to be continued during a year, and two of them for one year and six months. These advertisements so contracted for were furnished by the plaintiff to the defendants and the stipulated price for their publication was paid to them, they undertaking to procure them to be published for the times specified in their local newspapers. Before the completion of the publication of these advertisements difficulties arose between the plaintiff and defendants, and April 11, 1877, the defendants refused to complete the publication of the fourteen advertisements furnished by said fourteen firms to the plaintiff and by him to the defendants. . The plaintiff had before this paid to the defendants the full sum to which they were entitled for publishing these fourteen advertisements, and after their publication was discontinued the advertisers paid the plaintiff for the time during which the advertisements had run, and had they been published for the

full time stipulated the plaintiff would have been entitled to receive from them the further sum of $14,926.70, which sum he lost by the refusal of the defendants to continue longer to publish the advertisements.

July 27, 1879, this action was brought to compel a specific performance of the contract, and afterwards, by amendment, on terms, it was changed into an action for the recovery of damages for the failure to publish said fourteen advertisements.

The defendants by their answers admitted that they undertook to publish advertisements for the plaintiff under a contract, but denied that they were published on the terms set out in the complaint, and denied that they had broken the contract, and also denied that the plaintiff had kept and performed it on his part. The defendants also set out as counterclaims: (1) That plaintiff was indebted to them for $1,421.42 for advertising, with interest thereon from August 1, 1876, and (2) that before this action was begun the defendants furnished advertising space for the plaintiff for which he agreed to pay $2,473.40, for which sum he was indebted to them, with interest from April 1, 1877. The plaintiff replied to the counterclaims, denying any liability, and alleging that before the action was begun defendants assigned said alleged counterclaims to George P. Rowell, and that the claims were being litigated in a former action pending between the parties.

The jury found a verdict for the plaintiff, and assessed his damages at $14,926.70, with $13,765.09 interest. No exception was taken to the rule for the assessment of damages laid down by the court, except to the instruction that if certain facts were found interest might be allowed. On the trial the defendants contended that the plaintiff had violated the clause in the contract, which provides that the plaintiff's orders were to be executed " subject to the usual rules and regulations." It was insisted that one of these rules provided that the plaintiff and all others engaged in the same business should not give their customers less rates than those prescribed in a schedule furnished by the defendants.

The plaintiff insisted that there was no such rule, and also that if one existed it was not applicable to space contracts, but only to advertisements published on commission, and further, that the defendants' agent Foster saw the fourteen contracts made by the

plaintiff with his customers, assisted in settling their terms and approved of the prices agreed on. We must assume that the jury determined in favor of the plaintiff some or all of the sub-issues, which together make up the issue whether plaintiff had violated any of the usual rules and regulations.

The learned counsel for the appellant insists that the court erred in excluding evidence that the plaintiff did not make monthly payments on the contracts outstanding May 3, 1876. The plaintiff objected to the evidence on the grounds : (1). That the making of monthly payments was not a condition precedent ; (2) that it was not a defense to the plaintiff's action ; (3) that it was not pleaded as a defense. The objections were sustained. The court correctly ruled that making monthly payments under the fifth subdivision of the contract was not a condition precedent necessary to be performed by the plaintiff before he could maintain an action for damages arising out of the breach of the other provisions of the contract. When a condition precedent exists in a contract which is to be performed by the plaintiff he must aver and prove performance on his part before he can recover for a breach of the same contract by the defendant. (Code Civ. Proc. § 533 ; *Bogardus* v. *N. Y. Life Ins. Co.*, 101 N. Y. 328.) But if the provision is a collateral or independent covenant or promise, and the defendant wishes to avail himself of its breach as a partial defense, the burden is on him to plead and prove non-performance on the part of the plaintiff. The rule as to which party has the burden of pleading and proving a breach of a stipulation affords a very good test as to whether or not it is a condition precedent. These monthly payments did not in anywise relate to the advertisements which were furnished by the plaintiff to the defendants subsequent to May 3, 1876, but related wholly to independent contracts made prior to that date, and we do not think this stipulation was a condition or promise which the plaintiff was bound to plead and prove performance of as a prerequisite to his right of recovery for defendants' refusal to complete the publication of advertisements undertaken under the other provisions of the contract.

The order of time in which covenants or promises are to be performed is an important, though not a controlling, factor in determining whether they are conditions precedent, but in addition it must

appear that the promises alleged to be conditions precedent relate to the particular promise which the plaintiff alleges has been broken. We think the first and second objections to the evidence were well taken.

Was action prematurely brought? The counsel for the appellants asserts in his brief, under the head of point second, that when the action was begun the defendants were engaged in publishing about 100 advertisements for the plaintiff, under the contract, and refers us to page 56 of the case for the evidence. The evidence is that about 100 advertisements were being published April 11, 1877, and were continued for some time thereafter, but whether they were being published when the action was begun does not, so far as we find, appear.

The advertisements were published under independent orders given by the plaintiff to the defendants, the execution of which they undertook, and when they absolutely refused to complete the publication, a right of action accrued, although the defendants might then have been engaged in publishing other advertisements for the plaintiff under the contract pursuant to other orders.

The court did not err in rejecting the evidence as to the existence of the two counterclaims. It is alleged in the reply that the defendants had assigned those claims to George P. Rowell. Rowell was sworn as a witness for the defendants, and testified that he purchased those claims from Mr. Aikens, paying $3,000 for them, on the 22d of May, 1877.

He had previously testified that he agreed with Aikens, the president of the American Newspaper Union, to purchase the claims against the plaintiff and give $3,000 for them.

Aikens, the president, testified that Rowell, in May, 1877, purchased the claims of him and gave his check for $3,000 at the time. The oral sale and assignment, accompanied with payment of the purchase price, was valid. (*Risley* v. *Phenix Bank*, 83 N. Y. 318; *Truax* v. *Slater*, 86 id. 630.) This action was not begun until July 27, 1877.

Upon the question of interest the court instructed the jury as follows: "If you believe, on the evidence, that these defendants had at hand the ready means, by ordinary computation, of determin-

ing just what their breach of contract (if they were guilty of one) had cost the plaintiff in dollars and cents, then they had it in their power to compensate the plaintiff without awaiting a judicial liquidation of his damages." The evidence is that the defendants' agent knew what the customers had contracted to pay plaintiff for the publication of the fourteen advertisements. The defendants knew what sum the plaintiff had contracted to pay them for the publication of those advertisements. The only fact unknown, if it was unknown to the defendants, which bore upon the question of damages, was whether the plaintiff's customers would pay him such a proportion of the sums they had agreed to pay for full performance, as the time during which the advertisements were actually published bore to the whole time for which the plaintiff agreed to procure them to be published. The circumstance that this fact may have been unknown to the defendant, we do not think rendered the damages incapable of being ascertained by computation. It was a fact not in dispute on the trial, and was like weight, measurement or market value, one which could have been determined by reasonable inquiry.

If the plaintiff was entitled to recover $14,926.70 as of April 11, 1877, for defendants' failure to perform their contract, no injustice is done in allowing the interest on that amount. These are the only questions argued by the plaintiff on his brief, or at the bar of this court, and we find no error sufficient to call for a reversal of the judgment.

The judgment and order should be affirmed, with costs.

Van Brunt, P. J., concurred.

Judgment and order affirmed, with costs.