Ingraham, J.
(dissenting as to second cause of action).— The question as to the right of the plaintiff to recover on the second cause of action presented on this appeal, does not differ materially from that presented to the general term of this court when the case was before us on the last appeal. See 55 N.Y. Superior. Ct. 173. And a majority of the court then .held, that upon the case as then presented “ the plaintiff failed to establish a total breach of the contract by the defendant before he (the plaintiff) vol *40 untarily ceased business under the contract,” and for that reason reversed the judgment in favor of the plaintiff.
I cannot see that the case is at all changed by the evidence produced on the new trial, and after a careful re-examination of the question I am of the opinion that the plaintiff failed to prove a total breach of the contract by defendant as alleged in the complaint as the foundation of the second cause of action, and that the plaintiff by insisting that the contract was r in force down to the 22nd of June, 1882, and proceeding under it, elected to continue the contract in force. That he cannot proceed with the contract on the footing that it still exists and also treat the acts of the defendant as an immediate breach, and that bringing an action upon the contract as an existing contract and recovering a judgment for the amount due under the contract down to the 22nd of June, estopped the plaintiff from insisting that the acts of the defendant on the 11 th of March constituted a breach.
My views on this question are fully expressed in the opinion delivered at the general term on the last appeal, and it is not necessary for me to state them here. I wish simply to call attention to the allegations of. the complaint and the report of the referee. The plaintiff alleges for a second cause of action that, without any failure or default of the plaintiff, on or about the 11th of March, 1882, the defendant failed, ceased, refused and neglected to further carry out or perform said contract or agreement, and also alleges that thereupon and thereafter plaintiff often requested and demanded of defendant that it should carry out the said contract according to its terms, and plaintiff was always ready, able and willing to perform the same on his part and duly offered to so do, but the defendant continued to refuse so to do or to carry on or perform the services *41 provided to be performed for the plaintiff except that defendant would perform a less service and would transmit and deliver a less number of words at a greatly increased price.
The foundation of this cause of action is thus founded upon a total breach of the contract by the defendant on the 11th of March, 1882. No subsequent act of the defendant is alleged in the second cause of action for which plaintiff asks to recover, and to entitle plaintiff to recover on that cause of action he must prove that the defendant committed a breach of the contract on March 11, 1882.
As I understand the report of the referee he does not find as a fact that the defendant did commit a total breach of the contract on March 11,1882. The referee finds that the defendant wrote certain letters to the plaintiff and that the plaintiff sent a communication to the defendant between March 11,1882 and June 20, 1882, and then by the 10th finding of fact, that from the 3rd of February, 1881, to and including the 2 2nd of June, 1882, the plaintiff fully performed and fulfilled on his part all the terms and conditions of said contract, but the defendant did not perform all the terms and conditions of said contract on its part to- be performed and fulfilled as the assignee and representative of the Atlantic and Pacific Telegraph Company, and said defendant failed, neglected and refused to perform and fulfill the terms and conditions of said contract duing said time.
The referee also found, at the request of the defendant, that after the writing of the letters of March 11th, March 24th, and May 10th, the plaintiff continued to deliver his reports to the defendant for transmission, and the same were generally transmitted by the defendant as delivered to it, to the several points mentioned in schedule “ A,” and to said other additional points as the defendant was *42 requested to serve news reports under the contract, set out in finding number four, up to the 22nd of June, 1882, when the plaintiff ceased to deliver reports for transmission.
And the referee also finds that early and prior to the month of June the plaintiff in conversation with the president of the defendant, informed the president that he was unable to carry out the arrangement of March 11, 1882, March 24th and May 10th, and said to the president of the defendant “ that he might as well stop the service ” and the said president replied"“ that he did not propose to stop the service.”
On these findings of the referee I do not think that there was such a breach of the contract as would entitle the plaintiff to abandon the further performance of the contract on his part on the 22nd of June, and then maintain an action for a breach of the contract against the defendant.
As before stated, the referee has failed to expressly find such a breach by the defendant, but has found facts which show that the defendant, down to the 22nd of June, was carrying out'the essential provisions of the contract, and had by its president expressly stated -to the plaintiff that defendant did not propose to stop the service under the contract.
As was said in Bogardus v. The N. Y. Life Ins. Co., 101 N. Y. 335, “Itis only when the non-performance, is of a condition precedent, or when such party has wholly refused to perform, or has wholly disabled himself from completing a substantial performance, that the other party is relieved from performance, or a tender thereof.”
I do not think, therefore, that the plaintiff can recover on the second cause of action, and for that reason the judgment should be reversed. As to the right of plaintiff to maintain this action for the re *43 oovery of the amount due under the contract, I consider that as settled by former adjudications of this Court.*

 Note.—There have been three trials in this case. The first trial was before a referee. The action was brought on two causes of action. The referee reported in favor of plaintiff on both, reporting separate amounts on each, and judgment on his report was entered foi a gross sum consisting of the two amounts. On appeal to the general term the judgment was affirmed as to the first cause of action, and as to the other reversed and a new trial ordered, the general term laying down certain principles. The decision was made January 27, 1886 (See. 53 N. Y. Superior Court, 46). The defendant appealed to the Oourt of Appeals from the general term judgment affirming the judgment below on the first cause of action. The Oourt of Appeals, on April 10, 1888, reversed the entire judgment and ordered a new trial on the sole ground that the action being a common law action to recover money only, and the judgment being for a gross sum in favor of plaintiff against a single defendant, the general term had no authority to affirm as to one cause of action and reverse and grant a new trial as to the other (109 N. Y. 147). Before the Oourt of Appeals made this decision a new trial was had before a jury of the second cause of action and resulted in a verdict for plantiff for $250,000. From the judgment entered on that verdict defendant appealed to the general term where the judgment was, on the 19th of December, 1887, reversed, and a new-trial ordered, the general term laying down certain principles (55 N. Y. Superior Court, 173). Before a new trial could be had under this decision the Oourt of Appeals made its above decision. Thereafter, on the 24th of October, 1888, the whole issue in the action was referred to Frederick R. Coudert, referee, to hear and determine. From the judgment entered on his report both parties took an appeal, of the decision on which the foregoing is a report. The opinion of the referee, referred to in the foregoing opinion of the court, is as follows:
Fbedebick R. Cotjdebt, Refebee..—-The plaintiff seeks to recover upon two causes of action, both arising from breaches of the same contract. The contract is set'out in full in the findings of fact. It bears date January 28,1881, and is executed by the original parties, viz.: The Atlantic and Pacific Telegraph Company and the plaintiff respectively. It was to endure, by its terms, a period of ten years from February 1, 1881.
“ The undertaking of the Atlantic and Pacific Telegraph Company, as defined in the agreement, was to transmit over the lines operated by it, upon certain specific conditions, all such news reports gathered by the plaintiff as he might be required to furnish newspapers and sub *44 seribers taking news reports from him. It was also provided that the collections of all moneys due from such papers or subscribers should be made by the Telegraph Company, and a full account furnished and rendered in due form to the National Associated Press, under which' name the plaintiff was doing business. Any payment of balances that might be due the plaintiff by the Telegraph Company was to be made on or before the 15th day of each month.
“ The Atlantic & Pacific Telegraph Company having practically gone out of business and been merged into the defendant company, the latter undertook and assumed to perform all its valid agreements. Both parties thereupon (i.e., plaintiff and the present defendant), proceeded to carry out the contract, and it was so carried out by the defendant from the third day of February, 1881, when the Atlantic and Pacific Telegraph Company retired, until the 11th day of March, 1882. At this date the defendant company notified the plaintiff in writing that the service would not be continued upon the terfns provided in the contract, but that after the date of such notice, that is, after the 11th day of March, 1882, the plaintiff would be charged for the transmission of his press reports the same rates as those charged by the defendant for other press reports, and that unless such rates should be paid by the plaintiff, or secured to be paid by him, the service under the said contract would be discontinued. The plaintiff never assented to the modification proposed by the defendant, but stated that he would see the parties with whom he dealt and ascertain from them whether they would consent to pay the increased charges which they would have to pay under the terms of the defendant’s notice. The defendant did not, at any time subsequent to the date above mentioned, March 11, 1882, modify or change or withdraw the notice thus given of an intended refusal, and, in fact, of an actual refusal to carry on business under the terms of the agreement.
« There is no question that the rates required by the defendant as a condition to the continuance of its relations with the plaintiff were in excess of those provided for by the contract, nor is it disputed that the defendant expressed, and never retracted, its unwillingness and refusal to be bound by the term of ten years originally fixed, but, on the contrary, insisted that even the acceptance of its new conditions would not constitute an agreement of a permanent character. It remained in the discretion of the defendant, under the newly proposed terms, to further change and in fact to discontinue the amended contract on three months’ notice (see letters of March 11,1882, and March 24, of the same year). While the plaintiff continued until the 22nd day of June, 1882, to fulfill the terms and conditions of his contract and sought to arrange with his papers and subscribers upon the new basis, he never assented or agreed to the advance and amendments required by the defendant.
“ On the 20th of June, 1882, the plaintiff caused to be served upon the *45 defendant a notice in writing which was received and marked in evidence as plaintiff’s Exhibit No. 56, in which he notified the defendant company that although it had imposed different and more onerous terms, he had not waived and did not waive any right or claim under the contract, but asked and insisted that it should be duly carried out by the defendant. No answer to that notice was received from the defendant, nor from the Atlantic and Pacific Telegraph Company upon which it was also served. He continued to deliver despatches to the defendant until the 22nd of June, 1882, on which day he ceased doing business under the contract.
“ He now seeks to recover upon two causes of action, first: for moneys had and received for his account; and, second: for damages, consisting mainly of prospective profits for the breach of the agreement arising out of the facts above stated. Evidence was given of the profits actually realized by plaintiff while the contract was in actual operation.
“ The history of the litigation may be briefly stated as follows:
“ After joinder of issue, the case was referred to a Referee, who found that the contract was a valid and subsisting contract between the parties; that the plaintiff from the 3rd day of February, 1881, to and including the 22nd day of June,1882, fully performed all the terms and conditions to be performed on his part, but that the defendant did not perform its undertaking, specifying particularly the instances in which it had failed to fulfill its obligations.
“ Under the first cause of action the referee held that the defendant had not accounted for the moneys received, and was indebted in the sum of $16,777.42, being the difference between the amounts received by the defendant company and those which it was entitled, under its agreement, to retain. On the second cause of action he awarded the plaintiff $220,306 as the loss and damage occasioned by reason of the failure, neglect and refusal of the defendant to fulfill and perform the terms and conditions of the contract.
“From the judgment on this report the defendant appealed, and on that appeal it was adjudged by the general term that the judgment on the first cause of action should be affirmed, and the judgment on the second cause of action reversed, the amount awarded being in the opinion of the court excessive.
“From the judgment thus remaining in force and based upon the first cause of action, the defendant appealed to the Court of Appeals. Pending such appeal the new trail ordered on the second cause of action was had before a jury, and on that trial a verdict was rendered in favor of the plaintiff for $250,000, on which verdict a judgment was entered, and from which judgment defendant also appealed. The latter appeal was decided in the defendant’s favor, and the judgment entered thereon reversed and a new trial ordered. But before such new trial could be had the Court of Appeals reversed the judgment *46 on the first cause of action, not upon its merits, but upon the ground that the general term should not have divided the causes of action, and should have ordered a new trial upon both. In other words, that the appellate court could not sever the judgment rendered by the referee.
“Strictly, therefore, there is no adjudication binding upon me, the several decisions in the plaintiff’s favor having been reversed by the appellate tribunals.
“ The first cause of action is based upon the failure of the defendant to pay over to the plaintiff the difference between the amounts collected by it, and the aggregate sums which it was entitled to retain under the agreement. I have adopted and followed as to this the conclusions reached by the referee who first heard this case. His judgment has been followed by the general term of this court, and would be binding upon me as res adjudicata had the Court of Appeals not reversed the judgment. This reversal was, however, on purely technical grounds, and implies no disapproval of the decision of this court. Approving the referee’s finding to the effect that the plaintiff was entitled to recover, on his first cause of action, the sum of $16,777.42 with interest on that sum from July 1, 1882, I am of the opinion that this conclusion is fully justified by the evidence, and I have found accordingly on the facts presented to me.
“ This branch of the case being disposed of, it remains for me to consider the second cause of action set out in the complaint, viz.: the alleged breaches of contract by the defendant in refusing to carry out its agreement, and the amount of damages which the plaintiff is entitled to receive should it appear from an examination of the facts and of the law that he has made out a case.
“ I have been embarrassed at the outset by my desire to find in the decisions of this court a safe and certain rule to guide me in my efforts to reach a satisfactory result. This case has been heard twice before the general term, and the judgments obtained by the plaintiff twice reversed, but the learned justices who wrote for the court on each of these occasions did not express the same views on the main question. On the first appeal, the Chief Justice, with the concurrence of his brethren, decided that: the determination below as to the existence and validity of the contract, and of the plaintiff’s interest in it, as to the breach by defendant, and as to the amount of damages assessed in the first cause of action, was correct (53 N. Y. Supr. Ct., 49).
“ My respect for the authority of that court and of its judges would induce me to follow its exposition of.the law, even were I not bound to consider the matter res adjudicata. But the opinion subsequently delivered by Mr. Justice Ingraham on the second appeal takes a different view of the legal relations of the parties. I am, therefore, constrained to examine the question as though it were res nova and arrive at a decision oh my own responsibility. I am aided, however. *47 by the elaborate opinions rendered on the occasions that I have adverted to.
“ The facts upon which the plaintiff relies are substantially conceded; they were proved on the first and second trials, as well as before me, and although there are such differences as might reasonably be expected where men testify after the lapse of years, I have found nothing in the case to induce a belief that on either side there was any absence of candor and good faith in the giving of testimony.
“The main difficulty in the case appears to lie in the fact that the plaintiff did not at once upon receiving the letter of March 11th or of March 24th notify the defendant that he considered its refusal to go on with the contract as a breach which justified his immediate withdrawal from any obligation to it and warranted a resort to a court of law. Not only did he not do this, but he continued to send news reports to the defendant until the 22nd of June. If his action had been unaccompanied and unexplained by circumstances showing that he did not intend to wave such rights as he possessed, it might be claimed, and perhaps correctly, that he had assented to defendant’s conduct and had waived his right to treat the contract as broken. It must be borne in mind, however, that the evidence is very strong that he did not assent, either expressly or by implication, to the new conditions which were laid down in clear and unmistakable terms by the defendant. The company, not he, sought relief from an onerous undertaking. There is nothing to indicate that he was not entirely content with a contract that was then yielding him large returns, while it is evident that there were various motives which compelled the defendant to seek relief from a peculiarly burdensome duty. Not only was the defendant conveying the plaintiff’s messages at non-remunerative rates, but the fact that exceptional advantages were allowed the plaintiff caused great dissatisfaction to other customers; it was natural that the defendant should look for relief from a situation so unfavorable to its business.
“ On the other hand, the plaintiff would naturally hesitate absolutely to reject an opportunity of continuing his relations with the defendant. The company was in a position practically to command its own terms: no rivaTcornoration interfered to mitigate its ability to cut him off from the pursuit of his business: The only alternative left him was to find new terms of agreement after the defendant’s breach, or to withdraw altogether and leave the courts to fix the compensation that he might be entitled to receive.
“ As I have said, the contract was a favorable one to the plaintiff. He was reaping large pecuniary advantages under its terms. He was exceptionally situated with reference to his rivals, so far as the lines of the Atlantic and Pacific Telegraph Company were concerned, and he was naturally disposed to make an effort to continue his relations with the company if the new terms sought to be imposed were such *48 as his customers would approve. Whether in his effort to do this he waived the rights which he could have made fixed and certain by promptly breaking with the defendant, is the principal question which I have to determine.
“ There can be no question that, to sustain the plaintiff’s recovery in this action, it is necessary for him to prove that the defendant has refused to carry out a substantial part of its agreement. The mere fact that the company failed to perform some of its obligations, where independent provisions exist, would not of itself furnish an excuse for non-performance on the part of the plaintiff. But if there was a non-performance of a condition precedent, and if the defendant wholly refused to perform or in any way disabled itself from completing a substantial performance, then it is plain that the plaintiff was relieved from performance on his part, or from a tender of such performance. This is the rule laid down by the Court of Appeals in Bogardus v. The N. Y. Life Insurance Co., 101 N. Y. 328, and may be used as a test to determine the rights of the parties on the question of breach and its legal consequences.
“ If we turn to the letter of March 11,1882, we find that the language used by the company, speaking through its president, is plain and emphatic. It recites that the rates for the service performed for Mr. Goodsell are absolutely below the cost to the company of performing it, to say nothing of remuneration for the use of its wires, and besides operates a great injustice to other press customers. For this reason, the letter proceeds to state, the president was directed some weeks before by the proper committee to notify Mr. Goodsell, which he did verbally, that the service could not be continued unless a very material increase of compensation was paid or secured to the company. It also appears from this letter that on the 25th of January previous the Executive Committee had adopted a resolution to the effect that the same rates should be charged to all patrons for press reports of like character and to the same places. Finally the letter concludes by stating that from and after that date, March 11, 1882, the plaintiff would be charged for the transmission of his press reports the same rate as that charged for other press reports, etc., and that unless such rates were paid or secured to be paid to the company the service would be discontinued.
“ It is not disputed and clearly appears in the case that the rates charged other companies were materially higher than those charged under the contract with the plaintiff.
“ In addition to the notice that the increased rates would be enforced from the date mentioned, the company reserved to itself the right to change even these rates on thirty days’ notice. The plaintiff, therefore, had a right to assume that from the 11th day of March, 1882, the company was charging him for service at a rate beyond that *49 stipulated in his agreement, and that presumption, I think, continued until it was removed by a subsequent notice of revocation. That tho action of the company as shown by this letter constituted a breach of the contract in most material and substantial elements can hardly be disputed. Nor can it be plausibly maintained that under the imperative notice thus given him that the increased rates must be paid or secured or the service discontinued, the plaintiff was bound to await the pleasure of the company and the actual consummation of tito threat to discontinue. Had he at once refused and severed his relations, there could be no question as to his right to recover. He continued, however, as is stated above, to deliver despatches to the defendant, those were received and transmitted. He served a notice on the defendant that his contract was still in force and that he was carrying it out, which notice was received by the defendant without objection, and after its receipt his despatches were received and transmitted. This fact, it is contended by the defendant, shows an election to proceed under the contract and is inconsistent with a purpose to treat the contract as at an end.
“ The construction that I place upon the letter of March 11th, takes it out of the category of mere threats. Not only did it state the intention of the defendant as to the future, but it also gave him notice that from that time he was being charged a sum beyond that which he was bound to pay. While this was a breach and clearly a breach on tlio part of the defendant, it does not follow that the plaintiff was bound at once to refuse to perform his part of the agreement. There might be serious and valid reasons why a party thus circumstanced could not with justice to others or to himself, or even to the defendant, increase the damage created as a result of this breach by immediately severing his connection with the defaulting parties. Eor instance, if Mr. Goodsell had contracts with other persons, he was bound to carry them out so far as he was able, and he might well, while refusing to accept the terms and reserving that question for future discussion and litigation, insist upon having his despatches carried by the defendant.
“It may, for the purpose of the argument, be conceded that tho Telegraph Company had a Zooms pa&nitentitB and might at any moment before the plaintiff’s final withdrawal revoke its notice of March 11th and cancel its letter of March 24th. Cases may be found and authorities to support the theory that a threat, however clear, will not justify a broach if revoked before it is acted upon. Benjamin expressly states that an assertion of one that he will not perform will not excuse the other if withdrawn before acted upon. There is no pretence that this notice was ever withdrawn. The company never claimed that the directions of the Executive Committee had been in any way changed, and it is not pretended that at any time between the 11th of March and the 22nd day of June, when the final rupture *50 took place, it was. expected or believed that Goodsell was getting better terms than his competitors. I think, therefore, that the notice of March 11th was a continuing notice; that until withdrawn it was to be deemed in full force and effect, and that the service of such a paper justified him in withdrawing at any moment subsequent thereto, provided it was in full force and effect and he had not assented to the proposed change. We have, therefore, to deal with a positive and absolute refusal of one party to carry out his contract, which refusal, says Benjamin (Section 859), is in itself a complete breach of the contract on his part and dispenses with the useless formality of tendering performance. It may be added that in his letter of June 20th, the plaintiff did tender performance and gave the defendant one final opportunity to reconsider its w-rongful action and to resume its proper and legal relations to him.
“It is claimed, however, that the plaintiff having heretofore recovered a judgment against the defendant on his first cause of action for collections made up to June 22, 1882, it is adjudicated that the contract was in force between the parties up to that date. It is certainly the fact that the referee found that collections were made by the defendant for the plaintiff under the contract up to June 22nd, and that the telegraph service rendered by the defendant to the plaintiff from the 3rd of February, 1881, to the 22nd of June, 1882, under the terms and conditions of the contract, amount tg> the sum found in plaintiff’s favor and for which (or the balance of which) he recovered judgment. This is a serious objection. If it is valid, it is fatal to plaintiff’s recovery; the point, therefore, deserves careful consideration. It was claimed and held by the general term, prior to the decision of the Court-of Appeals, that the finding of the referee, and the judgment entered thereon, constituted within certain limits an adj udication of the validity and existence of the contract, so far as was necessary to warrant the finding and j udgment. To that extent the matter was to be treated as adjudicated, and may be so treated still, assuming for the argument that the subsequent reversal does not annul the effect of the adjudication, as it certainly does not in any other than a purely technical sense. In any event, the same point is presented by the adoption of the same findings on the evidence before me. But with all deference to the contrary opinion, cannot the’contract be deemed in force and binding upon and against the defendant, notwithstanding his breach of its obligations ? As against the defendant, the .contract might well be held to exist so far as was necessary to found an action for the recovery of money admitted to be the plaintiff’s. The referee found that the collections were made by the defendant under the contract. If they were not so made by what right and under what authority did the defendant collect and appropriate these moneys ? The defendant had no other title to them and claimed none; it admitted that whatever it had received *51 from the plaintiff’s customers had been received under the authority of the agreement. Surely it did not lie with the company to refuse payment because by its own act the contract was at an end. The wrong committed by the defendant might give rights to the plaintiff without creating corresponding privileges in favor of the defendant. The agreement was broken by the latter, not by the former, and in such case the innocent party might properly insist that for certain purposes the contract should be deemed in force, and for others at an end. There is nothing novel or unreasonable in this proposition, which is but another form of stating that no man shall take advantage of his own wrong. The plaintiff might, perhaps, have elected to treat the collections differently, and sue for moneys improperly received for his account, but assuming this to be true, he might still, without inconsistency, stand upon his rights as defined by the contract, and to the extent of claiming and recovering moneys confessedly his, insist that the defendant must refund such moneys in compliance with its undertaking.
“Nor is it clear to me that the plaintiff is seeking to establish contradictory and self-repugnant theories if he contends that the contract was in force as to the first cause of action and broken as to the second. In both cases he affirms the validity and obligation of the agreement. He does not seek to rescind, annul, or avoid it, or to lessen any of its obligations. On the contrary, in both instances he affirms the contract. The breach by the defendant did not destroy the agreement nor put an end to it. The wrong of the defendant having justisfied the plaintiff in refusing to perform any further duty under its term, he (the plaintiff) was entitled to demand and to recover what he was and would have been entitled to receive if the wrong had not been committed. To this end he demands back the moneys belonging to him and withheld by the defendant, and such a sum in addition as will indemnify him for the loss induced by the defendant’s wrong doing.
“If there were a process known to the courts by which the loss to plaintiff could be ascertained with mathematical accuracy, the application of that process to the second cause of action would, in connection with the ascertained amount of collections, enable the court or referee to do exact justice. While this is practically impossible, the conventional rules may be applied with theoretical certainty, and a sum of damages named which, added to the amount due under the first cause of action, will give the plaintiff what he would have received if the defendant had not violated its undertaking. Thus the obligation of the contract would be impaired only to the extent made necessary by that violation. In Quinn v. Van Pelt, 56 N. Y., 118, Rapallo, J., used this language: ‘ The action is not brought for the purpose of annulling or rescinding the contract, or recovering back the consideration, but for the enforcement of the contract and the *52 recovery of damages for its alleged breach. Various breaches are set out in the complaint and damages therefor to the amount of $20,000, are demanded. The plaintiff holds the defendant to his engagement and claims from him damages for its non-performance to a much larger amount than the consideration which the defendant received for his undertaking. This claim necessarily affirms the contract.’ See also Danolds v. The State of New York, 89 N. Y. 36.
“But even were this not clear, there is another argument that may be adduced to sustain this position, which is not weakened even if I should treat the decision of the referee on the first trial as practically res adjudicaia. I do not understand that he found the contract to be in force on the 22nd of June, nor at any time after the breaches of March 11th and March 24th. He does find affirmatively that during the period that elapsed between the months of February and June, 1882, the defendant committed various breaches of the agreement whereby the plaintiff lost large gains and profits which ho would otherwise have made. These violations of the contract are specified as consisting of failure and refusal to transmit reports, the demand of increased rates, and notice that such rates should thereafter be charged, etc., etc. His decision then, to the effect that the moneys collected were collected under the agreement can, at most, in connection with his other findings amount to this, viz., that notwithstand ing repeated violations of its agreement by which damage accrued to the plaintiff, it affirmed the contract to the extent of collecting moneys and paying itself the amount due for service. The mere fact that the defendant collected under the contract can only be material as showing that it held the contract to be in force to the extent of allowing it to act under certain of its provisions. That the defendant so interpreted the agreement, and to that extent chose to consider it in force, is a fact which on the testimony the referee was bound to find. But it does not follow that the defendant’s act could or did divest the plaintiff of the rights which he possessed if the findings as to various breaches are sustained.
“I might go a step farther. Suppose the defendant guilty of various breaches such as those found against it and causing damage to the plaintiff; suppose, also, that the plaintiff, having written his letter of June 20th, the defendant had at once replied acknowledging the justice of his complaints and withdrawing the letters of March Uth and March 24th and May 10th; the plaintiff might have been cut off from claiming damages for an absolute and final breach, and a consequent right on his part to perform no further act under the provisions of the agreement, but he would not thereby lose his right to recover the damages suffered by reason of actual and prior violations. If so, there would be a wrong without a remedy, and that wrong one that is, by analogy, at least, easily compensated in damages. Ho would in such case, I think, have his action for the breaches actually *53 committed and would still be entitled to insist upon performance of the agreement by the other party. There is upon this theory no difficulty in adjusting the rights of the parties under the findings heretofore made by the referee, and on this trial by me, The defendant having collected moneys under the agreement should return them, and having violated various provisions of the contract, must indemnify the sufferer. The plaintiff declined to proceed with a contract which the other party had violated and was still disregarding ; he should, therefore, recover the profits which he would have made if the breaches had not occurred.
“ These propositions may be sustained by authority. Thus, in McMaster v. The State of New York, 108 N. Y. 553, Judge Earl says: ‘ The contention that where there is a breach of contract by one party and the other thereafter is permitted to perform the same in part, receiving the contract price for such part performance, the injured party thereby waives or releases his right to damages for the breach, has no foundation in reason or authority. It is undoubtedly the rule that where one party to a contract breaks the same, the other party may stop and refuse further performance, but instead of doing so he may perform so far as he is permitted and then claim the damages he has suffered from the breach. Here the contractors furnished and cut the stone for the trimmings, not under a new contract, but under and in performance of their original contracts and for the prices therein mentioned, and this they could do without any ratification of the modification of the contracts attempted by the state. But here there was not silent acquiescence in the change. The contractors did not in any way assent thereto, and the finding that they protested against the same has some support in the evidence. A finding that they condoned a serious violation of their rights and effectually released and waived a large claim of damages should have something substantial to rest upon.’
“ So in the well-known case of Masterson v. the Mayor, etc., of Brooklyn, 7 Hill, 75, the court (Beardsley, Judge) expounds the law as follows: ‘ The party who is ready to perform is entitled to a full indemnity for the loss of his contract. He should not be made to suffer by the delinquency of the other party, but ought to recover precisely what he would have made by performance. This is sound in morals as it is in law. * * * The plaintiffs were not bound to wait till the period had elapsed for the complete performance of the agreement, nor to make successive offers of performance, in order to recover all their damages. They might regard the contract as broken up, so far as to absolve them from making further effort to perform and give them a right to recover full damages as for a total breach.”
“The application of the rule thus clearly expressed may readily be made to this case. It seems to me decisive of the right of plain *54 tiff to continue performance of the agreement so far as he was able, and to recover damages for breaches committed during such performance. He might, as he appears to have done, hope, expect and seek to avoid an absolute rupture, but I cannot hold that his efforts to continue relations which the defendant had made impossible should be deemed a condonation of manifest, deliberate and serious wrong. I might appropriately say with Mr. Justice Ease (McMaster v. The State of New York, 108 N. Y. 553): ‘A finding that they (plaintiff) condoned a serious violation of their rights and effectually released and waived a large claim of damages, should have something substantial to rest upon.’
“While, it is true, certain cases may be found holding the plaintiff to an election and limiting him in the pursuit of his remedies (such as Morris v. Rexford, 18 N. Y., 552; Moller v. Tuska, 87 lb. 166; Strong v. Strong, 102 lb. 69), it will be found on examination that in these cases the cause of action arose out of sales of goods on representations alleged to be fraudulent. It was held that the plaintiff (the seller) might not affirm and rescind the agreement of sales, but was bound to elect whether he should adopt the former and claim the agreed price, or the former and recover the property. This rule can Nave no application to such an agreement as the one now under consideration.
“ I propose now to consider another branch of the case, one to which I turn with satisfaction, as it has not received the attention of the court, and I may therefore consider it without any apprehension that I have involuntarily failed to give the opinions heretofore rendered by the judges of this court that respectful consideration and deference to which they are entitled,
“ I refer to the breach of contract which consists in defendant’s failure to pay over the amount of collections made by.it. Was this failure such a violation of the defendant’s covenant as would of itself justify the plaintiff in treating the contract as broken by the defendant? As matter of fact, there can be no question upon the record that the defendant collected and appropriated to its own use considerable sums of money belonging to the plaintiff. Those moneys are still unpaid. It is not necessary to hold that the retention of the funds was wrongful in a moral sense. It may be admitted that the defendant honestly believed that it was entitled to retain them. But this does not alter the legal complexion of the matter. By their agreement they were bound to account, at stated intervals, for tho collections made under its provisions. This they have failed to do, although frequently requested and urged'to comply with their undertaking. Did this failure alone justify the plaintiff in considering himself absolved from further liability, and entitled to bring this action for a breach? If this question may be answered in the affirmative, *55 the case is free from difficulty so far as the right to damages is concerned.
“ It is not easy to perceive any plausible theory upon which failure to account for and pay over moneys when required by the clear terms of an agreement should meet with special favor or fail to be treated as any other violation of contract duty. There certainly must be a time when the defendant’s refusal to account shall be deemed a breach of substantial performance. The defendant could not fail month after month to perform its stipulations in this important particular, and yet claim that the plaintiff was bound by an agreement thus repeatedly and systematically disregarded. In many cases the prompt payment of sums periodically due by one party is absolutely essential to performance by the other. It appears to have been so here, for the plaintiff testified that the refusal of the defendant to settle with him according to the agreement had made it impossible for him to proceed with his business. The defendant could not require the plaintiff to perform unless it were itself guiltless of any breach, and I can see no reason why a refusal, repeated and continued to comply with so important a condition should be looked upon with indulgence and receive compulsory condonation at the hands of the aggrieved party.
“ Many cases might be cited to fortify this position, and to justify me in holding as I do that the omission to account, and the refusal to pay over the collected funds constituted a breach of an important and substantial part of the contract, justifying the plaintiff in his refusal to proceed. Thus, in Canal Company v. Gordon, 6 Wall. 561, it was held that: ‘ In a contract to make and complete a structure, with agreements for monthly payments, a failure to make a payment at the time specified is a breach which justifies the abandonment of the work and entitles the contractor to recover a reasonable compensation for the work actually performed. And this notwithstanding a clause in the contract providing for the rate of interest which the deferred payment shall bear in case of failure ’ (head note).. Judge Swayne, who wrote for the court, used this language: 1 We think the fault of the rupture lies wholly with the company. Gordon & Kinyon adhered to the contract and pursued the work longer than they were bound to do. When they retired they were fully justified, and had a clear equity to be paid a fair compensation for the work they had performed.’ See also Withers v. Reynolds, 2 B. & A. 882.
“The recent case of Graf v. Cunningham, 109 N. Y. 369, is to the same effect. This was the case of a building contract under which Wilson agreed to erect a building for Cunningham. Wilson claimed at one time $400 as being due to him, but Cunningham denied the indebtedness and refused to pay, whereupon Wilson stopped work. A controversy arose between Cunningham and the subsequent lienors, the question being whether Wilson had forfeited his claims under the *56 agreement by his refusal to proceed. The court held that he had not: She (Mrs. Cunningham) could claim no forfeiture of the contract because he did not go on after her notice, for the reason that she was herself in the wrong, and had no right to insist upon his continuing the work while she refused to pay the $400 which were due the contractor at the very time when she gave this notice. * * * She could not put the contractor in default for his neglect or refusal to proceed and complete the building,because she was herself in default in refusing to pay him the $400 when due (Opinion Peckham, J., pp. 372-3). See also Rugg v. Moore, 3 North Eastern Rep. 286.
“ The case of Reynolds v. Voorhees, 30 Penn. 116, is more closely analogous, both in its facts and in the character of the questions determined. The action was brought by the buyer against the seller for damages for not delivering peaches under a contract to deliver the seller’s entire crop and receive weekly payments for all peaches delivered during each year. The seller continued to deliver on the Monday following, but receiving no payment stopped his deliveries on Tuesday. The buyer on the next day offered to pay, and asked to have the deliveries continued, which the seller refused, and thereupon the action was brought. Lowrie, Ch. J., in speaking of the rights and duties of the parties said: ‘ The plaintiffs broke their contract by not paying upon Saturday, and the defendant had a right to rescind it and seek another market. He continued another day to execute it on his side and again the plaintiff failed. Then he rescinded, and a day or two afterwards the plaintiffs came and were willing to pay. We think they, were too late, To relieve them would be to change their contract without cause, which cannot do.’
“ Many other cases might be cited to support the proposition that the non-payment by the defendant of the sums due under the contrast constituted a breach of that contract in a substantial and material particular. The repeated violations of this condition, notwithstanding the requests of the plaintiff for payment of the amounts due him were sufficient of themselves to justify him in treating the defendant as guilty of a breach. I am, therefore, of opinion that the plaintiff has established a cause of action for a breach of the agreement, and that he is entitled, in addition to the amounts collected for his account, to recover as damages such sums as he would have realized in the way of profits if permitted to proceed.
“ While the theory upon which such "damages may be estimated is simple enough, the practical difficulty in arriving at a sum that will compensate the one party without doing injustice to the other is great. Here we necessarily enter into the domain of speculation and conjecture; we are compelled to balance risks and probabilities, to weigh future contingencies in the light of present facts and to start upon an inquiry from which certainty and accuracy are necessarily excluded.
“ The plaintiff has shown that he realized during the few months of *57 his business relations with the defendant a considerable sum. He starts from this as a basis and asks me to assume that he would not have earned less in the future if his rights had been fully respected. The learned chief-justice of this court has carefully considered this question and laid down valuable rules based upon acknowledged principles of law. While he concedes the right of the plaintiff to recover prospective profits, he carefully limits the wide field which this vague expression naturally opens and limits the exercise of a power which might lead to grave abuse if uncontrolled by legal principles. He quotes the case of Curtis v. Rochester and Syracuse R. R. Co., 18 N. Y. 542, which holds that ‘ damages are to be proved, and none can be allowed except such as are shown by the proof to be, at least to a reasonable degree, certain.’ In the case before him he holds the assessment of damage by the referee as damages for losses in the future to be excessive. The amount fixed was $220,305. He points out various elements of uncertainty which should be taken into account in arriving at a proper sum. I cannot do better than to quote his own words, which seem to me to indicate with great clearness some of the difficulties in the plaintiff’s way when he claims the benefit of a presumption that the profits actually realized in the past would continue in the future. ‘ On all the evidence, I am satisfied that it was not shown with reasonable certainty that the loss of plaintiff of future profits amounted to the sum that he recovered. The enterprise was peculiar in its character. It was an exceptional, not an ordinary business. It was not of that kind that deals in staple articles demanded by the people in general. The plaintiff had no hold upon his customers, and the value given by them severally was the result of special bargaining. They could combine among themselves, and through an agent, such as the plaintiff was, make a contract with the defendant. The testimony disclosed a tendency in the customers to complain and desire new arrangements. It is not usual for a business to maintain, through a long time, the large profits like the present with which it may start. It would not be an unreasonable anticipation that other telegraph companies might compete with defendant and make such low rates that they would draw customers from the plaintiff. There were chances connected with plaintiff’s expectation of life and of continued skill in gathering npws. There were considerations pertinent to a presumption that an organization dependent for its continuance upon whim and opinion of individuals acting independently, would in reality continue in fully profitable operation for eight years. It would be necessary to perceive if casual and transitory conditions had not favored the plaintiff in the past, with no certainty that they would be repeated in the future The result reached below exempts the plaintiff from the consequence of mistake or misfortune or disability, which experience shows are more to be expected than perfect prosperity. Then, as has *58 already been said, the important deduction should be made for the value of plaintiff’s time or work in the future.’
“ In addition to the objections thus forcibly stated, I might add the probability that the newspapers which employed the plaintiff in the business of procuring and furnishing news might not have remained content to limit their field of enterprise to the old landmarks .defined by the contract. The Atlantic and Pacific Telegraph Company, though still in existence nominally, was out of the field as an active factor in the business. While the defendant was pushing its lines in various directions, and covering a daily increasing area of territory, the plaintiff was bound to limit his demands to the well defined and comparatively narrow limits within which the Atlantic and Pacific Company exercised its corporate powers. The difficulty of holding his customers under such restrictions was a growing one, and it is probable that in the near future the necessity of expansion beyond the ancient lines would be imperatively felt and would enforce recognition. That the defendant was in a position of exceptional power to take advantage of this source of embarrassment is too plain to require any more than mere suggestion. It is probable that before any considerable part of the term fixed in the agreement had expired the defendant might have been, by reason of this state of facts, in a position to dictate terms. Possibly it so considered itself when it arbitrarily refused to comply with obligations which it had assumed to carry out. If so, its action was at least premature; the agreement was certainly a profitable one at the time to the plaintiff, and he should now recover a reasonable sum to indemnify him for his loss.
“ I think that under all the circumstances thirty thousand ($30,000) dollars would be a proper sum to allow as damages; I therefore render judgment in his favor for sixteen thousand seven hundred and seventy-seven dollars and forty-two cents ($16,777.42), the amount found due the plaintiff for sums collected and not paid over, with interest from July 1st, 1882, to date, viz.: six thousand eight hundred and eight dollars and eighty-three cents ($6,808.83), amounting in all, with the said thirty thousand ($30,000) dollars, to fifty-three thousand five hundred and eighty-six dollars and twenty-five-cents ($53,286.25).”