(Hamilton Co. Court of Common Pleas.)

FRANKLIN ALTER, A TAX PAYER, ETC., v. THE CITY OF CINCINNATI, et al.

---

The law is not a substantive thing, susceptible of contemplation or recognition as an integrality, altogether separated from matter of fact, and, thus sequestered, standing ready for application.

It is the office of pleadings, to bring before the senses of the court those facts whereon a litigant is entitled to redress, and it is the office of a general demurrer to challenge a litigant upon the very facts which he himself sets forth.

Upon such demurrer to a pleading, every allegation of fact therein set forth must be taken as true. But conclusions of law, or the judgment formed by a party upon his own conception of his cause, when interpolated into a pleading, can be awarded no effect or weight whatever, and on demurrer, can not be deemed an allegation*of fact and be taken as true.

Intention is a purpose of mind, and can be come at only by inference drawn from external manifestations. An averment, therefore, that a party "intends" to do an unlawful act, is insufficient without stating facts from which such intention can be inferred.

Where the legislature has seen fit to entrust certain powers to a certain board, and while such board acts within the discretion committed to it, there is no place for judicial interference until it is clearly shown that such board is acting fraudulently or corruptly, or in violation of their duty as public officers.

---

Opinion of the court upon demurrer to petition.

WRIGHT, J.

This action is instituted by Franklin Alter, a tax-payer, against the City of Cincinnati and its Board of Commissioners of Water Works, to restrain a $250,000 issue of bonds contemplated by the latter, under the provisions of an act of legislature, known as the Water-Works Act. (92 O. L., 606 et seq.,) (The court here read the petition.)

The cause is submitted upon a demurrer, interposed by the defendants, to the petition.

The business of courts generally is the application of the law and its principles, to conditions of fact, when facts are brought to which law and principles can be applied; without facts whereon the law can lay hold, there is nothing to set the machinery of courts in action, for there is naught presented to which law can be applied.

To conceive that the "law" is a substantive thing, susceptible of contemplation or recognition as an integrality; to

[COPYRIGHT, 1897, BY CARL G. JAHN.]

conceive that it may be altogether separated from matter of fact and thus sequestered, stand ready for application, is difficult if not impossible.

No so-called "Proposition of Law" can so much as receive utterance without putting as very part of it, propositions of fact as marks of identification; if it be said "the law is so and so,"the propounder of necessity must have in mind a certain point of fact, whereon he asserts the law to be "so and so." If there be no hypothesis of fact assumed, no "law" can be so much as stated or conceived of. The law for any case cannot be known without first evoking the facts; for without facts there is nothing to which legal principles can be applied; and without the application of legal principles no law for the case can be announced.

Hence it is the office of pleadings to bring before the senses of the court those facts, whereon a litigant claims he is entitled to redress or protection; so that the court contemplating the facts averred, can say whether the law has an application for that condition of circumstances, which entitles the claimant to the relief asked. The office of a general demurrer, is to challenge a litigant, upon the very facts which he himself sets forth; and to secure the judgment of the court, whether upon these facts, even as he states them, the law will accord to him the relief which he demands: if yea, trial is had, and testimony heard to ascertain their truth; if nay, trial and testimony are alike useless; for their truth, if established, would present no condition of things whereto the law would attach to the end of awarding the relief prayed. Upon demurrer to a pleading every allegation of fact contained therein must be received as true: for the determination of the question, "Is there enough shown here, to constitute, if true, a cause of action?"

The conviction entertained, conclusion reached, or judgment formed upon his own conception of his cause, can, when interpolated into his pleadings, be accorded no effect or weight whatever; that is to say, cannot, upon demurrer, be deemed an allegation of fact and taken to be true; and for obvious reasons:

1st. Because these are but expressions by the litigant of his own opinion upon his case; a drawing by him of his own inferences from the facts present to his mind; whereas it is the duty of the court to draw the inferences, if any such are proper to be drawn from facts; it is the duty of the court itself, to say what deductions, if any, are proper to be made.

2nd. The pleading of conclusions, is but announcing the law for the case, as the pleader himself conceives it to be: it is the duty of the court to determine causes according to its own judgment of the law, and not according to that vouchsafed by litigant or pleader.

Some quotations from authorities will serve to illustrate how the foregoing principles are applied by courts of last resort.

And first from Arenz v. Weir, 89 Ill., 25, as follows: "A demurrer to a declaration admits all the facts well pleaded to be true, but not the inferences from them."

And Dubois v. Hutchinson, 40 Mich., 262, "Inferences of the pleader are not admitted by demurrer."

And from Ebersole v. The Bank of Morrison, 36 Ill., App. 267: "A demurrer does not admit inferences from the facts pleaded, nor matters of law deducted therefrom by the pleader."

And from The Supervisors of Saratoga v. Seabury, 11 Abb. N. C., (N. Y.,) 464. "As a demurrer admits none of the legal conclusions alleged in the pleading demurred to, but only the facts legally pleaded, we are confined to those facts in the complaint, and to the decision that those facts constitute a cause of action."

And from Kellogg et al. v. Larkin, 3 Pin. Wis. Rep.,123, "A demurrer admits only the truth of facts well pleaded and properly pleadable, and where a contract is set forth at length in a pleading, the question as to its legal effect and whether it is in violation of law or public policy, are questions to be determined from its provisions, and no averment can give to it a character which it has not, nor any admission take from it one which it has." Something of the nature of "inferences" and "legal conclusions" may be shown by further reference to this case; amongst other things, the defendant averred as follows, p. 128:

"And the defendant avers that the said association, its agreed plans, schemes, attempts and undertakings, tended to the manifest injury and restraint of trade, the depression of the wheat market, to reduce the price of the commodity of wheat and to stifle fair and lawful rivalry and competition of dealers therein."

And the court said:

"Upon the point of this last averment, a point was raised upon the argument, which, as it seems preliminary to the main question, I will here dispose of. It was said that because it is expressly averred that the association, its agreed plans, schemes, etc., "tended to the manifest injury and restraint of trade," etc., and because the truth of this averment is admitted by the demurrer * * * therefore, the judgment of the county court should have been for the defendants. The answer to this objection is manifest. Undoubtedly a demurrer admits the verity of every fact well pleaded; but I have to say; that * * * the

'agreed plans and schemes' * * * are not well pleaded, and for these two reasons: 1. Because they should be set forth in terms; not by describing their symptoms or effects, but stating their essence and nature, leaving the court to judge of their tendencies and probable effects."

In Ebersole v. The Bank of Morrison, 36 Ill. App., p. 267, the action was upon a note, and it was attempted to set up in defense that the note was void because given in consideration of a gambling contract; the plea of the appellant, set out the contract in full, and further alleged that it was a "bet;" it was contended that the demurrer to this plea admitted the truth of all things alleged, and hence admitted that the agreement "was a bet," as the pleader had averred; the court in this regard said, amongst other things, p. 270:

"which contract, the pleader, as a legal conclusion, calls a bet, but which is, as we interpret it, not necessarily a bet."

Page 271:

"We do not think the legal inferences to be drawn from the contract set up in the plea are in an issuable form, and the demurrer did not admit them as contended by appellant. A demurrer does not confess the character of a contract to be that by which it is designated in the plea."

And, Kinnier v. Kinnier, 45 N. Y., 535, the syllabus:

"An allegation in a pleading, that the judgment of another state is void by the laws of that state, is a statement of a conclusion of law, and not a fact, and is not admitted by a demurrer."

Per curiam, page 539,

"It is also alleged in general terms that the judgment was void in the state of Illinois. These are statements of law, and not of facts, and the sufficiency of a pleading, is to be determined by facts stated, and not by the conclusions of law averred, and the facts only are deemed to be admitted by a demurrer."

And from Bonnell v. Griswold, et al., 68 N. Y., 294:

"Averments in a complaint as to the meaning or contents of a paper set forth therein, or annexed to and made part thereof, are not admitted by a demurrer."

In the case of The Buffalo Catholic Institute v. Bitter, Admr., et al., 87 N. Y., 250, the action was to compel specific performance of a contract to sell real estate; quoting from page 256, the language of the court:

"The complaint alleges that Weisser by an agreement under his hand and seal, which is set out in haec verba, agreed to sell and convey, and that the plaintiff, by the same contract agreed to buy; * * *. The averment that the defendant, by the contract set forth, agreed

to sell, and the plaintiff to purchase, is simply an averment of the legal effect of the written instrument, and is not admitted by the demurrer."

In Bogardus v. The New York Life Ins. Co., 101 N. Y., 328, 336, the action was for an alleged breach of the conditions of a policy of insurance; the complaint alleged:

"That by the contract or policy of insurance * * * the defendant then and there bound itself to receive and keep separate, all the premiums paid on said policies * * * and to keep as a separate fund all the incomes, profits and accumulations, that should accrue therefrom."

The court at page 337:

"In interposing the demurrer, the defendant did not thereby admit the construction put upon the contract by the pleading demurred to, or the correctness of inferences, drawn from the facts admitted, but only the truth of such facts as were properly stated therein."

Peterson v. Roach, 32 Ohio St.,, 374:

"A demurrer to a pleading admits the truth only of that which is well pleaded. It does not admit the truth of mere conclusions of law nor of allegations of fact which are repugnant to or inconsistent with each other."

P. C. & St. L. R. R. Co. v. Moore, 33 Ohio St., 384.

"A demurrer to a pleading admits only what is well pleaded therein. It does not admit a conclusion of law unwarranted by the facts on which it is predicated."

See also to this effect:

Dawson v. Dawson, 25 Ohio St., 449.

Dubois v. Hutchinson, 123 Ind., 263, was an action in replevin; in the decision of the question, the court said:

"The plea merely asserts that Hutchinson had seized the property in his character of deputy sheriff, and was holding it in the same character when taken on the writ by the other deputy. This is mere matter of conclusion by the pleader, drawn from facts which the plea withheld, and the court is denied opportunity to judge for itself. * * *. This inference of the pleader is not admitted by the demurrer."

In the case at bar, the plaintiff relies upon three several grounds for the injunction; the first is now quoted, and its averments the plaintiff contends, the demurrer admits to be true; they are as follows:

"Plaintiff says that the issue of said bonds as contemplated by the said resolution, at the present time, would be a misapplication of the funds of the corporation, an abuse of its corporate powers, and would involve the execution and performance of contracts made in behalf of the corporation in contravention of the laws governing the same. That said Board of Commissioners of Water Works, have not at the present

time adopted definite plans and specifications providing for the construction of water works, or for the enlargement, extension, improvement or additions to existing water works, as required by said Act; and nevertheless intend to apply the sum of money realized from the issue of said bonds towards the purchase of lands, the performance of work, purchase of materials and performance of other contracts, so that independent of any complete and definite plans and specifications, contracts will be entered into from time to time, for parts of · a water works plant, whereas plaintiff avers, that under the statute said Board of Water Works Commissioners have no authority to enter into such contracts until definite plans and specifications have been adopted."

If these several averments. amount to allegations of fact, and as such are admitted by the demurrer, it must fail; and it is for the discussion of these propositions that I have taken occasion to refer at some length to authorities.

It is not within the power of intellect to conceive of the law for a case, independent and aside from the facts of it; it is impossible to conceive that as matter of pure law, stripped of all premise or hypothesis of fact, an issue of bonds by this commission would be a misapplication of funds, an abuse of corporate power, or be in contravention of law; upon these abstract questions, the mind can frame no answer one way or the other until some facts are brought; for without these there is nothing placed before the mind whereon to exercise its faculties in forming an opinion; whether or not the issue "would be a misapplication of funds," "an abuse of corporate power," etc., are questions of law to be determined by the application of legal principles to the actual facts and circumstances of the issue; and in averring that the "issue of said bonds as contemplated by said resolution, at the present time, would be a misapplication of the funds of the corporation, an abuse of corporate powers, and would involve the execution of contracts made in behalf of the corporation in contravention of the laws," the pleader has simply advanced his own individual opinion or conclusion upon the law, while the facts and circumstances, whereon his legal conclusions are predicated, if he has any predicate, are withheld from the court, and not set forth. The court must reserve to itself the prerogative of determining how the law for a case stands, and cannot suffer itself to be held by the opinions expressed in pleadings, howsoever honestly or confidently they may be offered; the plaintiff may hold one opinion, but this does not of necessity settle the legal questions involved, for perchance the court may hold another; the plaintiff can have no opinion without having first

ascertained some facts whereon his mind has operated to lead him to his conclusion; if any facts are known to him which in his judgment affect the question of bonds, they must be set forth in the pleading; they must be brought before the court; if no such facts are known, and none such pleaded, no influence can serve to stir courts beyond the law, nor relieve them of their duty under the obligations of their oaths to administer justice without respect to persons; the averments above last quoted are legal conclusions, pure; and under the law such are not by the demurrer admitted to be true.

The views of Chief Justice McIlvaine upon these points, are peculiarly appropriate, so that I quote them from the case of Mitchell & Watson v. The Treasurer of Franklin County, 25 Ohio St., 153:

"The truth of the averment in the petition, that the auditor of the county 'wrongfully and without warrant of law, and contrary to the constitution of the state,' placed the taxes sought to be enjoined upon the duplicate, was not admitted by the demurrer. Such averment must be regarded as a mere conclusion of law, which the pleader alleged should be drawn from the facts stated in the petition. A general demurrer admits the truth of facts as stated in a pleading; but the correctness of legal conclusions averred in the pleading, is not thereby conceded. The law, therefore, as understood by the court, and not as it may have been understood by the pleader, is the test by which the sufficiency of the facts stated in the petition must be determined. And, in applying this test, it must be assumed that the auditor, in placing the tax upon the duplicate, pursued the statute in such case made and provided, the performance of his duties in this respect, not being negatived by averment. The law presumes that public officers have faithfully performed all the duties of their offices, until it is otherwise made to appear."

See also Trustees of New London Tp. v. Miner, et al., 26 Ohio St., 452, 455.

It is in addition averred at bar, that the commissioners "intend to apply the sum of money realized from the issue of said bonds toward the purchase of lands, the performance of work, purchase of materials and performance of other contracts, so that independent of any complete and definite plans and specifications, contracts will be entered into from time to time, for parts of a water-works plant."—What lands do they propose to purchase? the petition does not say; what work do they propose to perform? again is the petition silent; what materials are they about to purchase? nowhere is it seen fit to supply the court with information upon this point. Are these the allegations of issuable facts, or merely a recitation of the conjectures of the

plaintiff? What contracts do they propose to enter into? the petition is silent; mention is made of none; none is set forth, none is referred to; there is no suggestion anywhere set forth, no claim made even in argument that the defendants have determined to enter into any kind of contract with any ascertained person for any purpose whatsoever; can courts be altogether unaware and ignorant about a contract and yet say that it is in contravention of the law? Shall judicial tribunals be heard to declare: "There is no contract set before us, there is no person known to us with whom it is proposed a contract shall be made, there is not brought to our attention any proposed term or contemplated condition of contract, it is not claimed to us, that the defendants have offered propositions to enter into contract, but yet the contract is unlawful. We do not know *what* contract is unlawful, but nevertheless it is unlawful."

It is averred that the defendants "intend to apply the sum of money realized from the issue of said bonds" toward various unlawful ends; how does the pleader gain his information upon the point of their intention? Intention is a purpose of mind, invisible, intangible; and can be come at only by inference drawn from external manifestations; by the consideration of actions, sayings, doings and conduct. What action has been taken by the commissioners, either individually or collectively, from which an inference can be drawn that they intend to misapply funds, abuse corporate powers, and contravene the laws? The court is nowhere favored with information in this regard.

The first alleged cause of action, when shorn of legal conclusions, inferences and terms of characterization, displays a single averment of fact, well pleaded; it is this: "That said Board of Commissioners of Water Works have not 'at the present time adopted definite plans and specifications, providing for the construction of water-works, or for the enlargement, extension, improvement or additions, to existing water-works." And it is claimed by the plaintiff, that the commissioners are without authority to make an issue of bonds in any sum until such plans and specifications have been adopted by them. Their powers in this respect, are conferred by the water-works act in question, 92 O. L., 606, et seq.; its constitutionality and validity upon the points here involved, have been affirmed by the Supreme Court of Ohio, in the case of Alter v. The City of Cincinnati, reported in 37 W. L. B., p. 161.

Section 5 of the Act, proceeds:

"Said commissioners are authorized to take up and consider the surveys, plans and specifications, if any, theretofore made or devised for water supply,

and they may cause such additional investigations, surveys, plans and specifications to be made, as they may deem necessary, and after consideration thereof, they may adopt definite plans and specifications, providing for the construction of such works."

Section 7, Second.—No money shall be expended on account of plans, specifications, drawings, construction or equipment of the water-works herein provided for, or for any other expense connected therewith, unless first authorized by said commissioners, and upon vouchers, signed by their president and clerk, upon the auditor, or other auditing officer, if there be no auditor of such city, to be paid by the treasurer of such city, upon the warrant of the auditor or other auditing officer, if there be no auditor, out of the funds hereinafter provided. Said commissioners shall, before entering into any contract, cause plans and specifications, detailed drawings and forms of bids to be prepared, and careful estimate of cost to be made," etc.

Plans and specifications cannot be adopted until after they have been prepared; the provisions of the sections quoted above, empower the commissioners to *cause* surveys to be made, plans and specifications to be prepared, and authorize them to pay therefor "out of the funds hereinafter provided;" these funds are those provided for by sec. 10, as follows:

"To provide a fund to pay the cost and expenses contemplated by this act, the said commissioners are hereby authorized to borrow, from time to time, as money may be needed, in behalf of such city, an amount not to exceed six million, five hundred thousand ($6,500,-000) dollars, and to issue bonds therefor in the name of such city, under the corporate seal thereof," etc.

So that the commissioners are directly authorized by the act to issue bonds for the express purpose of providing money to pay for the making of surveys, plans and specifications. I am not now considering the question of the amount of the proposed issue, for that question is not presented under the first alleged cause of action; the question there is, "have they authority to make an issue of *any* bonds prior to the adoption of definite plans and specifications?" This question must be answered in the affirmative; the act gives them that power; the demurrer is therefore good against the first alleged cause of action.

As to the second: It is stated in the petition in words following:

"Plaintiff further avers, that by sec. 10, of said Act of April 24th, 1896, bonds may be issued by said Board from time to time, only as the money may be needed for the purposes contemplated by said act, and that at the present time, said sum of $250,000, is not needed for any

purpose contemplated by said act, and cannot be applied to any lawful purpose during the year 1897, or for several months thereafter, and that no moneys are now needed by said Board of Water Works Commissioners, except to pay the members of the Board their salaries, and also the salaries of its clerks and engineers, and other incidentals not to exceed in all, the sum of $50,000, during the next six months."

The amount of the proposed issue, is in the neighborhood of 4 per cent. of the total sum authorized by the act, and upon the face of it, cannot be said to be an unreasonable amount to place available for surveys, plans and specifications, salaries and preliminaries. But does the law contemplate that the court, or the commissioners, shall conduct the preliminaries and finally construct the works? Does the law intend that the court, or the commissioners, shall determine when it becomes necessary to issue bonds, and how much money is needed from time to time? Who shall determine "when money may be needed?" Who shall determine "how much money may be needed?" If the legislature had intended that these questions should be determined by the court, it would have vested the power in the court, and not in the commissioners; the Act provides, (sec. 10), "the said *commissioners* are hereby authorized to borrow from time to time as money may be needed and to issue bonds therefor;" when the law vests a particular power in a certain board or officer, that board or that officer is thereby given the right to exercise that power according to its own good judgment; it is so intended by the law; and not that the power should be exercised by some other authority, and the judgment of the first authority thereby controlled. The determination of the questions, "when is money needed," and "what sum is needed" depends upon many things, and cannot intelligently be reached except by familiarity with and consideration of many matters; such as, what if any surveys should be made; what if any plans and specifications should be prepared; how many, if any engineers are to be engaged in preliminary investigations; what data, if any are to be acquired to enable commissioners to understand purposed systems, and to acquaint themselves with their several features of merit or impracticability; what, if any, investigation of a topographical or geological nature, should be made upon the ground to ascertain the feasibility of a system under consideration.

No man can say "when and what money is needed," without he first acquaint himself with matters such as these, and many more. The determination of all such matters, is by law committed to the good judgment of the com-missioners, and not to that of the court. The commissioners are constituted as such to the very end that they, and not some other authority, shall decide these questions; the power is given to them by law, and the court cannot take to itself powers conferred elsewhere by the legislature. The commissioners having authority to determine "when money may be needed," and they having determined that it is needed now, it remains for consideration what inquiry the court shall make into the amount of the proposed issue of bonds. The plaintiff avers, that no more than $50,000 are "now needed;" the commissioners entertain another and different opinion, for they have determined that $250,000 are "now needed;" individuals may be of one opinion, commissioners may be of another; who shall decide? The law vests this discretion in the commissioners; as between the judgment of the plaintiff and the judgment of the commissioners, that of the latter must be accorded superior weight, because the law has given them, not him, authority to decide this point; as between the judgment of commissioners and that of judicial tribunals, it must be seen to what extent the exercise of a discretion which by law is vested in the board, can be interfered with and controlled by courts; cases have heretofore arisen and have received the arbitrament of courts of last resort; in them can be seen illustration sufficient to set forth the principles which govern.

In Fay, Petitioner, etc., 15 Pick. 243, it was undertaken to quash the proceedings of the Mayor and Aldermen of Boston, in licensing a ferry; amongst the syllabi, there is as follows:

"Upon a petition for a writ of certiorari to quash the proceedings of the Mayor and Aldermen in licensing a ferry, it was held that the court would not review the decision of the Mayor and Aldermen upon the question of public convenience and necessity, the regularity of their proceedings only being open to examination under such process."

Upon page 254, appears the fourth contention of the petitioner; it was contended:

"4. That the public convenience and necessity did not require such a ferry, that there were no inhabitants there, and no line of travel to be accomodated." The Court: "This is a question not open to consideration in this form of proceeding. Of the common convenience and necessity the mayor and aldermen were to judge."

From Kitchell, et al. v. The Board of Commissioners of Union county, 123 Ind. 540, et seq., I quote at length as follows:

"Certain tax-payers residing in Union county, sought to enjoin the Board of Commissioners from proceeding to let

the contract for the erection of, and from erecting a court house for the use of the county. An injunction was asked upon two independent grounds: 1. It was alleged in substance that there was no necessity for the erection of a new court house, because the county already had one that was in all respects suitable, safe and convenient, and fully adequate to accomodate all the public offices and business of the county, for fifteen or twenty years to come, and that the proceedings of the Board in ordering the old court house to be taken down, and in adopting plans and specifications for a new one, were altogether in the interest and for the benefit of certain architects, whose plans had been adopted, and who were to receive a specified percentage on the cost of erecting a new building. * * *. It was necessary that the power to determine when the public interests demanded that the court house in any county should be repaired, or rebuilt, or whether it should be superceded by a new one, should be lodged somewhere. The legislature has seen fit to entrust that power to the Board of County Commissioners, and while the Board acts within the discretion committed to it, there is no place for judicial interference, until it is clearly shown that the commissioners are acting fraudulently or corruptly, or in violation of their duty as public officers. The law having devolved the duty of deciding in respect to the propriety of replacing the old court house with a new one upon the county board, a court cannot substitute its judgment for that of the body to whom the duty of determining the necessity has been committed, unless it appears that the decision of the Board was influenced by corrupt or fraudulent means, or unless it is so manifestly wrong and prejudicial to the public interest as to create the conviction that it could only have resulted from a palpable disregard of official duty. * * *. If the county board in the honest exercise of its discretion, determined that the old court house was insufficient or insecure, and that the public interests would be best subserved by the erection of a new one, and if they were proceeding to carry out that determination in the manner pointed out by statute, their proceedings were not subject to judicial restraint. There is nothing in the record to overthrow the presumption that the Board was proceeding in good faith and according to law. It is true it is averred that the old court house was in all respects sufficient, and that the object of the commissioners in proceeding to erect a new one, was merely to promote the interests of the architects, who were to receive a specified percentage of the contract price. These averments fall far short of tendering an issue of fraud or corruption, or bad faith. They only

show that the public officers charged with the responsibility of acting under the sanction of their official oaths, entertained one opinion; while the complainants, as tax-payers, took a different view of the matter. The averment that the commissioners were acting merely in the interest and for the benefit of the architects, is not an averment of a fact. It is the bare statement of a conclusion, without any facts for a foundation to rest upon."

In Gaines v. Thompson, 7 Wall., 352, it is said by the Supreme Court of the United States:

" * * * An officer to whom public duties are confided by law, is not subject to the control of the courts in the exercise of the judgment and discretion which the law imposes in him as a part of his official functions. Certain powers and duties are confided to those officers, and to them alone, and however the courts may, in ascertaining the rights of parties in suits properly before them, pass upon the legality of their acts, after the matter has once passed beyond their control, there exists no power in the courts, by any of its processes, to act upon the officer so as to interfere with the exercise of that judgment while the matter is properly before him for action. The reason for this is, that the law reposes this discretion in him for that occasion, and not in the courts."

In the case at bar the commissioners in their judgment have determined that $250,000 is needed, and it is proposed that the court shall say "$250,000 is not needed, $50,000 is needed, and no more."

In City of Detroit v. Hosmer, Circuit Judge, 44 N. W. Rep., 623, the Supreme Court of Michigan, announced:

"It is one of the necessary and fundamental rules of law that the judicial power cannot interfere with the legitimate discretion of any other department of government, so long as they do no illegal act, and are doing business in the range of the powers committed to their exercise, no outside authority can intermeddle with them."

From State ex rel. v. The Gas Co., 37 Ohio St., 45, it appears that the city council of the city Ironton had passed an ordinance fixing the price of gas; the validity of the ordinance was denied by the Gas Co.; says the Supreme Court, on p. 48.

"The validity of the ordinance is denied on the grounds that it was passed by the members of the city council without sufficient information and from improper motives. The charge in the answer among other things, is, that they were 'actuated by motives of hostility to the defendant and of pandering to popular prejudice against said Gas Co., and without the proper motives to deal fairly and justly with the defendant, passed the said pretended ordinance.'

It is also averred that the price fixed for gas by the ordinance, is not a fair compensation, but grossly inadequate. * * *. The presumption is in favor of the good faith and validity of the action of the council; and this presumption can only be overcome by the averment of issuable facts showing the contrary. It is only where the facts show not a real, but the mere colorable exercise of the authority vested in the council, that the ordinance can be held invalid. Denunciation of the motives and action of the members of the council may show the opinion or conclusion of the pleader in regard to their action; but it is of no legal significance on the question of its validity. So also as to the alleged inadequacy of the price of gas as fixed by the ordinance. In the absence of facts showing fraud or bad faith on the part of the council, the inadequacy of the price is not the subject of inquiry."

In Sims v. The Street Railroad Company, 37 Ohio St., 556, it was sought to restrain by injunction, the city of Cleveland from passing an ordinance granting to the Brooklyn Street Railroad Company permission to use the tracks of the West Side Street Railroad Company, etc. The Supreme Court said, at page 567:

"The statute vests in the city council power to grant the use of the streets to any street railroad company, if beneficial to the public. A court of equity will not interfere with the exercise of this discretionary power, in the absence of facts showing fraud or bad faith."

In State ex rel. v. The County Commissioners, 49 Ohio St., 301, the syllabus is:

"The expediency of the construction or repair of a bridge, under sec. 4938, Rev. Stats., rests in the administrative discretion of the County Commissioners, and such discretion cannot be controlled by mandamus."

Thus is made prominent the principle, that a discretion committed by law to a board, officer or other authority, cannot be controlled or interfered with by courts, so long as it is being exercised honestly and in good faith, and within the limits of the power conferred; it is only when facts are laid before the court which show that discretion is about to be exercised from improper and unlawful motives or to some improper and unlawful end, or in excess of the power conferred, that there is aught upon which the court can lay hold, as a basis for application of the law's restraint. If there is no bad faith, no attempt at fraudulent practices, nothing that savors of wrong, but simply the exercise of the discretion vested by law, and nothing more, the law is not being, and has not been violated.

In the case at bar, the discretion to determine the amount of money to be borrowed from time to time, is, by the law committed to commissioners; they have determined upon a certain sum; the petition nowhere attempts an allegation, nor is it suggested even in argument that this sum has been fixed out of any improper motive, or in the desire of accomplishing any unlawful end, or that the defendants were in the fixing of it prompted by any consideration other than that of exercising the power committed by law, in conformity with the law. Their action in thus determining upon a certain sum, is therefore not subject to review or control by courts. The second alleged ground for injunction states no cause of action and is not well taken.

The third and last is in language following:

"Plaintiff further avers, that in view of the fact that said act requires the interest on $6,500,000 so authorized to be issued, to be paid out of the net revenues of the Water Works of the City of Cincinnati, it is impossible that there should be sufficient net earnings from which to pay the interest and annual Sinking Fund, for the redemption of bonds so issued, and for this reason it is impossible to carry out the provisions of said Act, without further amendment of the law providing means for the redemption of the bonds that may be issued in the construction of said work."

The considerations applied to the first alleged cause of action might with propriety be set to this: I am disposed, however, to enter into some further discussion of it.

First:—The said act does not require any payment of interest out of the revenues of the water works, until "after the completion of the work herein authorized, and after the control of the same has been surrendered to the Board having charge of the water supply." (Sec. 15.)

Second:—The act does not require the interest upon $6,500,000 to be paid, unless bonds in that full sum shall have been issued.

Third:—Upon the question of 'the ability of "the net revenues of the water works" to "pay the interest and annual Sinking Fund for the redemption of bonds so issued," the first and natural inquiry pressing upon the mind is, "what are the amounts of each?" I am acquainted with no method of ratiocination whereby it can be ascertained which of two sums exceeds the other, save to compare the two, and set one off against the other; if sums are in amount unknown, and unable to be ascertained, mere speculation and idle conjecture upon the relative proportions of such unknown sums is not to be undertaken or indulged in by courts; the amount of "interest" which may accrue cannot now be known; it is independent upon the aggregate to which bonds may in the

future be issued, and upon the interest rate or percentage which those bonds shall bear; this rate is not yet fixed nor settled, save that it shall not exceed 4 per cent.; the extent to which within the limit bonds will be issued, is not yet determined; the mathematical process whereby, in the absence of both principal sum and rate per centum, an amount as interest can be ascertained, is unknown to me. As to the "net revenues" of water works, the water works by which these revenues shall be produced, are not as yet in existence; are not, as yet, even in process of construction; the rates and charges to be made for water which they may supply, have not been fixed; the cost of operating them is not known, cannot now be ascertained; the quantity of water to be consumed and paid for, is equally inapprehensible; the court cannot engage itself in horoscopy and assume to venture a prediction upon whichof two unknown sums may, in the indefinite future, turn out to be the greater. The averments of the third alleged cause confute themselves. There seems to me nothing which merits further consideration. The petition states no cause of action, and the demurrer must therefore be sustained.

Theo. Horstman, for Plaintiff.
Ellis G. Kinkead, Corporation Counsel.
John W. Warrington, for Defendant.